UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In Re WORLD WIDE MEDICAL TECH.
LLC., et al., patent litigation
consolidated cases,                          CASE NO. 4:11-cv-00614-RS-CAS

_____/


**DEFENDANT BEST MEDICAL INTERNATIONAL, INC.'S
RESPONSE TO PLAINTIFFS' MOTION TO EXTEND DISCOVERY DEADLINE
AND MOTION TO COMPEL RESPONSES TO DISCOVERY**


Defendant, Best Medical International, Inc., a Delaware corporation, ("Best (Del.)"), by

and through undersigned counsel, responds to and submits this memorandum of law in

opposition to Plaintiffs' Motion to Extend Discovery Deadline And Motion To Compel

Responses To Discovery From Best (Del.) Best Medical International, Inc. (Document #

94), and states:

**BACKGROUND**

1.      Plaintiffs filed their Complaint (Document # 1) on December 6, 2012; an

Amended Complaint (Document # 38) on February 23, 2012; and a Corrected Amended

Complaint (Document # 39) on February 24, 2012.

2.      The parties to the action are set forth in Paragraphs 3 through 14 of the

Corrected Amended Complaint. Paragraph 12 of the Corrected Amended Complaint provides:

> Defendant <u>BEST MEDICAL INTERNATIONAL, INC. ("Best") is a corporation organized and existing under the laws of Delaware with principal offices located [at] 7643 Fullerton Road, Springfield, Virginia, 22153.</u> Defendant Best has been manufacturing and/or distributing low dose radioactive sources, , both Iodine (I-125) and Palladium (Pd-103) seeds, together with pre-plugged and pre-loaded needle assemblies since before 2005. In May 2009 Defendant Best acquired out of bankruptcy the brachytherapy production assets and equipment of the North American Scientific, Inc. ("NASI") and through a wholly owned subsidiary Brachytherapy Services, Inc. has continued production and distribution of the a SurTrak clone pre-plugged and pre-loaded needle assembly previously sold by NASI in violation of the '760 Patent. During the period relevant to this action Defendant Best sold infringing product into the Northern District of Florida. (emphasis supplied).

3.      The first sentence of Paragraph 12, underlined above, is accurate. The remainder of Paragraph 12 is incorrect.

4.      Since late February, Best (Del.) has in good faith tried repeatedly to discuss the proper parties to this litigation with Plaintiffs' Counsel and correct the error in Paragraph 12. The following is a summary of the various conferences, pursuant to Local Rule 7.1(B), which Best (Del.) has initiated in an effort to correct Plaintiffs' error.

5.      On February 24, 2012, counsel for Best (Del.) conferred with Plaintiffs' Counsel, explained the relationship between Best (Del.) and the "TeamBest entities"[1] that are not named in the Corrected Amended Complaint, and further explained why Best (Del.) was an improper party to the action.

6.      On March 6, 2012, in an effort to clarify the proper parties for Plaintiffs,

---

[1] Unless otherwise referred to individually, "TeamBest entities" refer to Best Medical International, Inc. a Virginia corporation ("Best (VA)"), Best Theratronics, Inc. and Brachytherapy Services, Inc.

Best (Del.) provided a letter explaining the difference between Best (Del.) and other TeamBest entities and an affidavit from General Counsel Shawn R. Weingast further discussing the corporate entities and introducing and attesting to various corporate documents which were provided as Exhibits. A copy of this correspondence is included in Exhibit "A."

7.     On March 13, 2012, counsel for Best (Del.) conferred with Plaintiffs' Counsel and asked if Plaintiffs would dismiss Best (Del.) in light of the information provided, which showed that Best (Del.) was not a proper party to the action.

8.     On March 14, 2012, Plaintiffs' Counsel contacted counsel for Best (Del.) and stated that Plaintiffs were unable to determine if Best (Del.) was an improper party and that Plaintiffs would not dismiss Best (Del.) from the action.

9.     On March 20, 2012, Best (Del.) filed its Motion to Dismiss (Document # 59) in this action.

10.     In response to Best (Del.)'s Motion to Dismiss, on April 5, 2012, Plaintiffs filed a Memorandum in Opposition to Best (Del.)'s Motion to Dismiss (Document # 67). In this Memorandum, Plaintiffs make no mention of the important distinction between Best (Del.) and Best (VA).[2] In fact, Plaintiffs are silent as to the existence of Best (VA) despite having received a sworn affidavit from Best (Del.)'s Shawn R. Weingast, General Counsel, as to the relationship of these entities, the corresponding relationship of Best (VA) and Brachytherapy Services, Inc., and details on the acquisition and handling of the

---

[2] Plaintiffs express great concern about Best (Del.) and Best (VA) having an "identical name, headquarters, offices and ownership." *See* Plaintiffs' Motion to Extend Discovery Deadline, Par. 2. These factors do not change the fact that Best (Del.) and Best (VA) are independent corporate entities organized in different states for different purposes. *See Owl Fumigating Corp. v. Cal. Cyanide, Co., Inc.*, 30 F.2d 812 (3d Cir. 1929). This is a point that Best (Del.) has made repeatedly to Plaintiffs throughout this proceeding.

NASI[3] assets. *See* Exhibit "A."

11.     The Court deferred ruling on the Motion to Dismiss and, on April 11, 2012, ordered discovery to determine whether it has personal jurisdiction over Best (Del.) (Document # 71). The parties were to "not later than April 24, 2012, *jointly* submit a proposed discovery plan on the *limited subject of personal jurisdiction*." (emphasis added).

12.     On April 18, 2012, counsel for Best (Del.) called Plaintiffs' Counsel to discuss the discovery plan. At that time, Plaintiffs' Counsel asked counsel for Best (Del.) to identify a witness for deposition pursuant to Fed.R.Civ.P. 30(b)(6). Counsel for Best (Del.) explained that Mr. Weingast would testify on Best (Del.)'s behalf and that he was also knowledgeable of the TeamBest entities.

13.     On April 23, 2012, counsel for Best (Del.) provided Plaintiffs' Counsel with a final proposed discovery plan for consideration. Other than the April 18th phone conference, Plaintiffs provided no input into the plan. In its email transmittal of the plan, Best (Del.) again presented Mr. Weingast as its corporate officer for deposition and gave dates of his availability, which were well within the ordered discovery deadlines. *See* Exhibit "B" (including the transmittal email and the plan which was attached).

14.     On the afternoon of April 24, 2012, the due date for the Discovery Plan, Plaintiffs' Counsel contacted Best (Del.) and accepted the plan as drafted by Best (Del.), which included the deadlines and scope for discovery. The agreed discovery scope was to concern "the sole factual issue of the Court's jurisdiction over [Best (Del.)]." Best (Del.)

---

[3] NASI refers to North American Scientific, Inc.

timely filed the Joint Proposed Discovery Plan on Personal Jurisdiction. (Document # 77).

15.     The Court approved the Discovery Plan on April 25, 2012. (Document # 78).

16.     Both parties served Written Discovery electronically by May 4, 2012, in accordance with the plan.

17.     Best (Del.) served its responses to Plaintiffs' written discovery on June 4, 2012. Plaintiffs responded to Best (Del.)'s discovery requests on June 7, 2012.

18.     To date, Best (Del.) has not been contacted about setting Mr. Weingast, or anyone else, for deposition and has not received a notice pursuant to Fed.R.Civ.P. 30(b)(6).

19.     On June 7, 2012,[4] Plaintiffs' Counsel contacted Counsel for Best (Del.) and asked if Best (Del.) would object to a two-week extension of time for jurisdictional discovery. Without citing to any particular response, Plaintiffs' Counsel also stated that the written responses received by Best (Del.) were inadequate and threatened to file the Motion to Compel currently before the Court. Counsel for Best (Del.) stated that Best (Del.) responded in good faith to Plaintiffs' discovery requests as the proper party Defendant and said that Best (Del.) even attempted to answer for other parties--going so far as to explain the operations of Best (VA) who is not a party to the action. Plaintiffs Counsel stated that he would review Best (Del.)'s responses more closely.

---

[4] Also on June 7, 2012, Plaintiffs served Best (Del.) with their responses to Best (Del.)'s Discovery Requests. This service was late and provided Best (Del.) even less time (only one day) to consider the information provided. Further, upon inspection, Plaintiffs took the liberty of redefining multiple key terms before tendering responses which rendered their responses useless for Best (Del.)'s purposes.

20.     Later on June 7, 2012, after conferring with his client, Best (Del.)'s Counsel confirmed Best (Del.)'s opposition to an extension to the discovery period via email to Plaintiffs' Counsel.

21.     On June 8, 2012, following over four months of efforts by Best (Del.) to correct Plaintiffs' misunderstanding of the proper parties to this action and without any further discussion, Plaintiffs filed their Motion to Extend Discovery Deadline and Motion to Compel Responses to Discovery (Document # 94).

22.     As a result of Plaintiffs' actions, Best (Del.) is now in the unfortunate position of having to recite for the Court the frustrating litany of communications with Plaintiffs on these issues and having to avail itself of limited judicial resources in order to resolve this needless discovery dispute.

## SUMMARY OF ARGUMENTS

23.     Best (Del.) objects to Plaintiffs' Motion to Extend Discovery Deadline. Plaintiffs failed to meaningfully take part in the preparation of the Discovery Plan where they could have adjusted proposed timelines. Further, this Court clearly stated in its April 11, 2012 (Document # 71) and April 25, 2012 (Document # 78) Orders that discovery was to be completed not later than June 8, 2012, and Plaintiffs showed no urgency to meet this deadline. Eleventh Circuit case law states clearly that good cause requires diligence on behalf of the parties. *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *see also Williams v. Blue Cross & Blue Shield of Fla., Inc.*, 2010 WL 3419720 (N.D. Fla. Aug. 26, 2010) (relating to a scheduling order for discovery and

noting that a party cannot establish the diligence necessary to show good cause if the party failed to seek the needed information before the deadline). Plaintiffs displayed no diligence and there is no good cause to extend the deadline for discovery.

24.     In their Motion to Compel Responses to Discovery, Plaintiffs take issue with Best (Del.)'s objections to Plaintiffs' First Requests for Production, First Interrogatories, and First Admissions (hereafter referred as the "requests") and ask the Court to strike or deem as waived Best (Del.)'s objections. Plaintiffs also ask the Court to compel Best (Del.) to amend its timely-served discovery responses without asserting any additional objections to the requests. Finally, Plaintiffs ask the Court to order Best (Del.) to identify the proper party or parties of "TeamBest" that are (a) engaged in the business of brachytherapy, (b) the manufacture of low dose radioactive seeds and fiducial markers, (c) the manufacturing and assembly of pre-loaded and pre-plugged needle kits, and (d) the utilization of the means of production acquired from NASI.

25.     There is no basis for Plaintiffs' Motion to Compel because Best (Del.)'s objections to Plaintiffs' discovery are proper. More importantly, however, Plaintiffs' Motion should never have been filed and has caused unnecessary expenditure of judicial resources and added expense to Best (Del.) because Plaintiffs failed to make a good faith effort to resolve the matters raised in the Motion without court intervention, and declined to respond to Best (Del.)'s repeated and reasonable requests that the parties engage in a discussion in an attempt to resolve the dispute or simply analyze the information provided to Plaintiffs before Best (Del.)'s Motion to Dismiss was even filed.

26.     Plaintiffs' Motion to Compel misleads this Court regarding Plaintiffs'

claimed good faith effort to resolve the issues raised in the Motion prior to filing, as the only concern Plaintiffs raised with Best (Del.) prior to filing was the request to extend discovery since they did not have ample time to review the documents. At no time prior to filing its Motion to Compel Discovery did Plaintiff express a particularized concern with any of Best (Del.)'s specific responses as required by Local Rule 26.2(B). Finally, at no time prior to filing its Motion did Plaintiffs express any concern about the timing of production of Best (Del.)'s corporate books or the objections raised in the Best (Del.)'s responses.

## MEMORANDUM OF LAW

### PLAINTIFFS HAVE NO GOOD CAUSE FOR WHICH AN EXTENSION SHOULD BE GRANTED.

27.     Fed.R.Civ.P. 6(b) and 26(b)(2) govern enlargements of time and the extent of discovery. Fed.R.Civ.P. 16 also governs case management and scheduling orders that affect enlargements of time. Rule 16 requires the Court to "enter a scheduling order." Fed.R.Civ.P. 16(b)(1). Once entered, the scheduling order "may be modified only upon a showing of good cause." *Sosa*, 133 F.3d at 1418 (citing Fed.R.Civ.P. 16(b)). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Id.* (citation omitted); *see also Armitage v. Dolphin Plumbing & Mech., LLC*, 2006 WL 1679360 (M.D. Fla. June 19, 2006) (denying motion to extend discovery deadline for an additional deposition where there was not good cause to extend discovery).

28.     A Scheduling Order "is not a frivolous piece of paper, idly entered, which

can be cavalierly disregarded by counsel without peril." *Payne v. Ryder Sys., Inc. Long Term Disability Plan,* 173 F.R.D. 537, 540 (M.D. Fla.1997) (quoting *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987)). The Court's approval of the Discovery Plan on Personal Jurisdiction here should carry the same level of significance as a Scheduling Order.

29.    Regardless, under the facts presented, there is no good cause to extend the discovery deadline in this case. The Court's Order clearly required "discovery on personal jurisdiction to be completed *not later than June 8, 2012*." (Document # 71) (emphasis added). Plaintiffs did not diligently adhere to this schedule and thus have no good cause. For instance, Plaintiffs had over a month to provide a deposition notice from the date when Mr. Weingast was first identified as Best (Del.)'s designated officer pursuant to Fed.R.Civ.P. 30(b)(6). *See* Exhibit "B." Instead of noticing and deposing Mr. Weingast to determine his suitability for the purposes of this discovery, Plaintiffs simply raised concerns and speculated that his deposition would be a "significant waste of time and resources." (Document # 94).

30.    In addition to having sufficient time to notice and depose witnesses, had they scheduled properly, Plaintiffs were given ample time to review the documents and responses supplied by Best (Del.) prior to depositions. Plaintiffs served Best (Del.) with their requests via email and U.S. Mail on May 4, 2012. Under Fed.R.Civ.P. 6(d) Best (Del.) had until June 6, 2012, to provide its responses.[5] Best (Del.) responded on June 4, 2012, leaving the balance of the week for any Oral Discovery to be performed. It is also

---

[5] Although Plaintiffs served their requests by electronic means, the parties do not have a consent agreement in place. Fed.R.Civ.P. 5(b)(2)(E).

noteworthy that Plaintiffs were aware of Mr. Weingast's availability during this period. Plaintiffs failed to take advantage of this opportunity.

31. Plaintiffs state that Best (Del.) is playing "shell games;" however, it was reiterated—over and over again—that Best (Del.), is not the correct party in this suit and has no connection to the State of Florida. Furthermore, Plaintiffs' discovery requests, according to Rules 33, 34 and 36, were well beyond the scope of "the sole factual issue of the Court's jurisdiction over Best (Del.)." (Document # 77, quoting the approved Discovery Plan). Plaintiffs' discovery requests were specifically related to other companies and individuals outside the suit and were not used to determine personal jurisdiction of Best (Del.). Instead Plaintiffs went on a fishing expedition for information on all of the TeamBest entities. Although, Best (Del.) objected on this basis to many of the requests, in the spirit of not wasting judicial resources, Best (Del.) answered all questions as clearly and as completely as possible. Moreover, upon inspection of Best (Del.)'s responses, the undersigned believes that Plaintiffs have the personal jurisdiction information that they need and that further discovery in this matter is unnecessary.

32. Finally, from the outset, Plaintiffs were notably absent during the preparation of the Discovery Plan, which governed the time frames. As mentioned, Best (Del.) prepared and filed the Court approved Discovery Plan. Plaintiffs did not draft or edit the draft provided for their review. Plaintiffs' cooperation in the development of the proposed discovery plan was limited to two brief phone conferences and fell far short of the requirements of active participation as required by Fed.R.Civ.P. 26(f). If Plaintiffs wanted shorter response times or to modify the scope of discovery in any way, they were

not diligent in taking that opportunity. Plaintiffs' problem is of their own making in this case.

33.     Therefore, Best (Del.) respectfully requests the Court deny Plaintiffs' Motion to Extend Discovery Deadline.

### PLAINTIFFS' MOTION TO COMPEL DOES NOT MEET THE REQUIREMENTS OF LOCAL RULE 26.2(B).

34.     Local Rule 26.2(B) states that a motion to compel discovery <u>shall</u>:

    a.  Quote verbatim each interrogatory, request for admission, or request for production to which objection is taken.

    b.  Quote in full the opponent's specific objections, *and*

    c.  State the reasons such objection should be overruled and the motion granted.

35.     Plaintiffs' Motion to Compel does not comply with any of the Local Rule 26.2(B) requirements. Instead, Plaintiffs generally categorize Best (Del.)'s responses as "evasive and incomplete."

36.     As a whole, Plaintiffs' Motion to Compel does not give notice to the Court or to Best (Del.) of Plaintiffs' concerns and should be denied.

### THE RESPONSES PROVIDED BY BEST (DEL.) ARE COMPLETE, NOT EVASIVE, AND CONSISTENT WITH THE SCOPE OF DISCOVERY; THEREFORE THE COURT SHOULD NOT COMPEL FURTHER DISCOVERY.

37.     As noted above, the Court ordered discovery (Document # 71), but limited the scope of discovery to issues of personal jurisdiction. Plaintiffs did not adhere to this scope with their discovery requests. Instead, Plaintiffs are using this jurisdictional

discovery opportunity as a fishing expedition to search for potential infringement. Rather than trying to determine whether personal jurisdiction is proper over Best (Del.), Plaintiffs are asking for information from entities which are not even named in the lawsuit. This is beyond the scope of the discovery needed to establish personal jurisdiction of Best (Del.) and is improper. Moreover, by filing their Motion to Compel, Plaintiffs continue to exhibit a cavalier attitude toward the Court's Order. *See Payne*, 173 F.R.D. at 540 (M.D. Fla. 1997). Indeed, the interrogatories, document requests and admissions made the subject of the present motion exceed the scope of personal jurisdiction and therefore ignore the limitations placed on this jurisdictional discovery by the Court. The paragraphs below are only a few examples of Plaintiffs' requests which go beyond the scope. (Pursuant to Local Rule 26.2(A), a copy of Plaintiffs' First Requests for Production, First Interrogatories, and First Admissions Upon Defendant Best Medical International, Inc. is included as Exhibit "C" for the Court's reference.)

a. Plaintiffs request for production of documents number 4 states, "Produce all documents sufficient to identify what portion of the "Best Companies," as defined herein, that Suthanthiran does not own."

Plaintiffs request documents concerning the ownership structure of all companies owned by Krishnan Suthanthiran. This request does not relate to the form of contacts of Best (Del.) with the forum State of Florida, and thus is beyond the limited scope of personal jurisdiction.

    b.  Plaintiffs request for production of documents number 7 states, "Produce all documents identifying any license or patent under which Brachytherapy Services or another member of the Best Companies manufactured, marketed, sold and/or distributed Prospera and stranded Prospera seeds from March 11, 2009 to the Present including any rebranding of the Prospera seeds and strands."

Plaintiffs request for documents regarding Brachytherapy Services, which is not a party to this suit, and other companies owned by shareholder Krishnan Suthanthiran regarding the sale of "Prospera," which was not mentioned in the complaint, is beyond the scope of the limited personal jurisdictional discovery.

    c.  Plaintiffs request a response to interrogatory no. 12 which asks for the name, address, contact, and annual sales volume of the treating facility, wholesaler, distributor, or consignee for radioactive seeds Iodine (I-125) and Palladium (Pd-103).

Plaintiffs ask for information regarding sale of radioactive seeds and not the pre-plugged needles at issue in this lawsuit. Plaintiffs are requesting trade secret information regarding pricing models and customer lists, which is beyond the discovery scope of personal jurisdiction.

    d.   Plaintiffs request a response to interrogatory no. 9 asking for the volume of sales for the non-specified time period for products not related to brachytherapy, such as Radiotherapy and diagnostic imaging devices, Gold fiducial markers, Medical physics/QA instrumentation, repair and calibration, Patient immobilization, Cardiovascular brachytherapy, and R&D, fellowship awards, patient education and clinic marketing.

Plaintiffs ask for information regarding sales of companies not parties to this suit and for corporate information about various products that are in no way related to brachytherapy or any form of pre-loaded needles that are the subject of this litigation.

38.    As discussed further below, Best (Del.)'s objections to the above line of questions and those similarly focused are proper. Plaintiffs filed this motion to request information from parties not named in the lawsuit and for which Best (Del.) cannot answer. These requests have a purpose not to determine personal jurisdiction, but to obtain trade secret information, corporate strategies and know-how information for radioactive seed manufacturing in general. Plaintiffs are requesting information beyond the scope of personal jurisdiction.

39.    Best (Del.) has answered all appropriate requests by Plaintiffs completely and in good faith, and asks this Court to deny the motion to compel.

### BEST (DEL.)'S OBJECTIONS ARE PROPER AND SHOULD BE UPHELD.

40.     Plaintiff challenges Best (Del.)'s objections, which precede Best (Del.)'s specific responses to each of Plaintiffs' discovery requests, and which state that they are incorporated into the specific responses and objections that follow. When objecting, one must "show specifically how each interrogatory or production request is irrelevant, overly broad, burdensome or oppressive." *See Panola Land Buyers Ass'n v. Shuman*, 762 F. 2d 1550, 1559 (11th Cir. 1985). Accordingly, Best (Del.)'s individual responses to each of Plaintiff's discovery requests do, in fact, specifically state how each interrogatory, production, or admission request is objectionable. Best (Del.)'s objections preceding its individual responses are stated for purposes of clarity for the record, and to preclude any later argument that, by not including them in Best (Del.)'s discovery responses, the objections have been waived. The objections are not included in Best (Del.)'s responses for purposes of obstructing discovery as claimed by Plaintiffs.

41.     No case law was cited in Plaintiffs' Motion specifically addressing the inclusion of objections preceding individual responses to discovery requests. Also, Fed.R.Civ.P. 33(b)(3) specifically states that, "[i]f the party upon whom interrogatories are served objects to the interrogatories, the reasons for the objection must be stated *and* the interrogatory must be answered to the extent the interrogatory is not objectionable." (emphasis added). *See Schipper v. BNSF Ry. Co.,* No. 2:07-cv-02249, 2008 WL 2358748, at *1 (D. Kan. June 6, 2008) (stating that "previously [Rule 33] said that if an objection was asserted it would be in lieu of an answer [however] the 1993 amendment provide[s]

that the responding party must answer to the extent the interrogatory is not objectionable, despite the objection . . . Thus, a party may assert an objection and still respond to the interrogatory."); *Leisure Hospitality, Inc. v. Hunt Properties, Inc.*, 2010 WL 3522444, *3 (N.D. Okla. Sept. 8, 2010) ("A party may object *to some or all* of the requested discovery, but it must be clear whether the responding party is objecting or not and, if objecting, to what part of the request and on what specific grounds.") (emphasis added). Likewise, Rule 34 governing document inspection and production includes the specific instruction that "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed.R.Civ.P. 34(b)(2)(C); *see also* Fed.R.Civ.P. 34 *Advisory Committee's Notes* (1993 Amendments stating that "if a request for production is objectionable only in part, production should be afforded with respect to the unobjectionable portions.")

42.     It is clear from the face of the rules and the accompanying Advisory Committee Notes that Best (Del.)'s assertion of a partial objection followed by an answer to the unobjectionable part of a specific discovery request is acceptable practice under the discovery rules.

### Best (Del.) Provided Sufficient Information through its Discovery Responses and Other Good Faith Efforts to Assist Plaintiffs in This Action.

43.     As the named party to the lawsuit, Best (Del.) can only respond on its behalf to propounded discovery. Best (Del.)'s admissions or answers to interrogatories cannot bind other parties. Best (Del.) cannot produce documents that are not in its possession or control. Within these limitations, Best (Del.) attempted in good faith to

respond to Plaintiffs' requests.

44.     Best (Del.) provided its complete corporate file in response to Plaintiffs' requests for production. Further, Best (Del.) provided sufficient information with which to determine whether personal jurisdiction was proper. If Plaintiffs refuse to accept these facts, Best (Del.) can do no more.

45.     Further, where possible, Best (Del.) did respond based on its knowledge of *other* TeamBest entities. Perhaps the best example of this is Best (Del.)'s response to Plaintiffs' Interrogatory No. 9, which includes the following statement: "To the best of the knowledge of Best (Del.), Best (VA) sold products that can be classified as brachytherapy products and/or accessories including seeds during the relevant time period in Florida."

46.     Moreover, Best (Del.) provided other information, *see* Exhibit "A," *prior* to filing its Motion to Dismiss in this action in hopes of having Plaintiffs voluntarily dismiss Best (Del.) and correct their Complaint to include the proper party.

47.     Best (Del.) notes that Plaintiffs have filed a Motion to Amend/Correct Amended Complaint (Document # 97) and a Corrected Second Amended Complaint as to Best Defendants (Document # 99). Plaintiffs still have not removed Best (Del.) as a party and, despite the Certificate of Conference filed with Plaintiffs' Motion to Amend, the undersigned was not conferred with before the motion was filed. This is yet another example of Plaintiffs' inability to communicate and coordinate with Best (Del.) in good faith.

48.     Best (Del.) responded in good faith to Plaintiffs' requests and coordinated

throughout these proceedings to help Plaintiffs correct their pleading error. Additional discovery is unnecessary and unwarranted.

**PLAINTIFFS' DISCOVERY IN RESPONSE TO THE COURT'S ORDER WAS PROPOUNDED FOR AN IMPROPER PURPOSE.**

49.     Fed.R.Civ.P. 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Commentary to the 1983 Amendments to the Federal Rules of Civil Procedure, 97 F.R.D. (1983). Plaintiffs have failed in their duty by virtue of their conduct in this matter.

50.     As explained herein, Best (Del.) has provided Plaintiffs with documents and statements that would help ascertain the proper parties to this action.

51.     In response, Plaintiffs have failed to acknowledge the communications, failed to read the information, and reported certified conferences that did not occur. All of these actions by Plaintiffs have resulted in substantial and unnecessary legal fees that have been incurred by Best (Del.).

52.     As discussed in this Response, Plaintiffs discovery was aimed at multiple TeamBest entities which are not parties to this lawsuit. Regardless, Best (Del.) responded in good faith.

53.     Despite Best (Del.)'s good faith responses and other information voluntarily provided, Plaintiffs felt compelled to file their Motion to Extend Discovery Deadline (without any good cause) and Motion to Compel Responses (not conforming to the Local Rules) which required Best (Del.) to respond yet again and repeat its position that corporations from different states can have the same name but be different entities,

and that Plaintiffs have named the wrong corporation.

54.    Plaintiffs' discovery actions are irresponsible and do not illustrate that a reasonable inquiry was made into the factual basis of their requests and pleadings. Further, the scope of Plaintiffs' requests was unreasonable given the materials which had already been provided, *see* Exhibit "A," and the limited subject of personal jurisdiction of Best (Del.) as ordered by the Court.

55.    Plaintiffs' discovery actions are in violation of Fed.R.Civ.P. 26(g)(1) and are subject to sanctions pursuant to Fed.R.Civ.P. 26(g)(3).

**WHEREFORE**, Defendant Best (Del.) requests that this Court:

A.    Deny Plaintiffs' Motion to Extend Discovery Deadline;

B.    Deny Plaintiffs' Motion to Compel Responses to Discovery from Defendant;

C.    Sanction Plaintiffs pursuant to Fed.R.Civ.P. 26(g)(3) and award Best (Del.) reasonable expenses, including attorney's fees, caused by Plaintiffs' violation; and

D.    Award Best (Del.) any other relief the Court deems proper.

## DECLARATION OF AUTHENTICITY OF EXHIBITS

I declare under the penalty of perjury that Exhibits "A" and "B" attached hereto are true and correct copies of the correspondence that was delivered to Plaintiffs' Counsel on the marked dates.

_____
F. Joseph Ullo, Jr.


_____6/22/12_____
Date

Dated this 22nd day of June, 2012.

Respectfully submitted,


  /s/ F. Joseph Ullo, Jr.
F. Joseph Ullo, Jr.
Florida Bar No. 0027166
jullo@llw-law.com
Edwin A. Steinmeyer
Florida Bar No. 0883920
esteinmeyer@llw-law.com
LEWIS, LONGMAN &WALKER, P.A.
315 Calhoun Street, Suite 830
Tallahassee, Florida 32301
Telephone: (850) 222-5702
Facsimile: (850) 224-9242

O'Neal R. Mistry
oneal@teambest.com
BEST MEDICAL INTERNATIONAL, INC.
7643 Fullerton Rd
Springfield VA 22153
Telephone: (703) 451-2378 ext. 107
Facsimile: (703) 451-4977

William H. Hollimon
Florida Bar No.: 0104868
bill@hollimonpa.com
HOLLIMON, P.A.
118 N. Gadsden St.
Tallahassee, Florida 32301
Telephone: (850) 320-8515

**Attorneys' for Defendant**
**Best Medical International, Inc.**
**A Delaware Corporation**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to all parties of record.

/s/F. Joseph Ullo, Jr.
Attorney

**EXHIBIT "A"**



LEWIS
LONGMAN &
WALKER | P.A.

A T T O R N E Y S   A T   L A W

REPLY TO: TALLAHASSEE

March 6, 2012

*VIA EMAIL AND HAND DELIVERY*
J. Wiley Horton, Esq.
Pennington, Moore, Wilkinson,
    Bell & Dunbar, P.A.
215 South Monroe Street, Second Floor
Tallahassee, Florida 32301

**RE:    Rule 7.1 Conference relating to World Wide Medical Technologies, LLC, et al. v. Core Oncology, Inc., et al., Case 4:11-cv-00614-RS-WCS; Supporting Documentation for Dismissal of Best Medical International, Inc.**

Dear Mr. Horton:

On behalf of Best Medical International, Inc. ("BMI"), we are providing information for your review in the above referenced matter. This letter follows our phone conference with you on February 24 and my email to you of February 28.

Paragraph 50 of your Amended Complaint presents inaccurate facts which are material to the determination of the proper party to this action. BMI cannot be a proper party defendant for your clients' claims for two reasons. First, BMI had no form of ownership of the alleged infringing device (i.e., the SurTrak needle assembly) during the critical period that you indicated. Second, even if some form of liability can ascribed, BMI of Delaware (listed as Defendant in Paragraph 12 of the Amended Complaint) has no corporate relationship with Brachytherapy Services, Inc. ("BSI") which is alleged to have produced and distributed the SurTrak needle assembly.

You indicated the claims take into consideration alleged infringements between 2001 and 2008. During this time period the proper party to any action relating to the SurTrak needle assembly would be North American Scientific, Inc. ("NASI") – not BMI. Brachytherapy Services, Inc. ("BSI") purchased the assets of NASI in April, 2009. This purchase did not include the SurTrak technology referenced in your complaint. Also, although BMI of Virginia now owns BSI, this

***See Things Differently®***

| BRADENTON | JACKSONVILLE | TALLAHASSEE | WEST PALM BEACH |
|---|---|---|---|
| 1001 Third Avenue West | 245 Riverside Avenue | 315 South Calhoun Street | 515 North Flagler Drive |
| Suite 670 | Suite 150 | Suite 830 | Suite 1500 |
| Bradenton, Florida 34205 | Jacksonville, Florida 32202 | Tallahassee, Florida 32301 | West Palm Beach, Florida 33401 |
| p | 941-708-4040 • f | 941-708-4024 | p | 904-353-6410 • f | 904-353-7619 | p | 850-222-5702 • f | 850-224-9242 | p | 561-640-0820 • f | 561-640-8202 |

00976198-1

w w w . l l w - l a w . c o m

Wiley J. Horton, Esq.
March 6, 2012
Page 2

would not result in any liability to BMI. BMI of Virginia is a separate and distinct entity from BSI. It exerts no control over BSI, and, moreover, BSI did not purchase the NASI assets until **after** the alleged infringement dates.

Based on the information provided to BMI in our Rule 7.1 conference on February 24, 2012, we demand that you dismiss BMI as a Defendant from this action. Attached please find an affidavit from BMI's Corporate Counsel, Shawn Weingast, wherein he attests to the times and critical corporate documents that are relevant to your analysis. Please review this affidavit and its supporting documentation and advise immediately as to whether the Plaintiffs will continue their action against BMI. We would be willing to enter and agreed order dismissing BMI without prejudice to the Plaintiff.

Thank you for your attention to this matter. We look forward to a quick resolution of BMI's involvement in this case. Please feel free to call if you have any further questions.

Sincerely,

F. Joseph Ullo, Jr.
Ed Steinmeyer
Lewis, Longman & Walker, P.A.

cc:   Guy M. Burns, Esq. (via email)
      Michael J. Brickman, Esq. (via email)
      W. Scott Newbern, Esq. (via email)
      Bill Hollimon, Esq. (via email)

**ATTACHMENT**

**AFFIDAVIT OF SHAWN WEINGAST**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA (TALLAHASSEE)

WORLD WIDE MEDICAL
TECHNOLOGIES, LLC, *et.al.,*

      Plaintiffs,

                           Case No. 4:11-cv-00614-RS-WCS

v.

BEST MEDICAL INTERNATIONAL,
INC., *et. al.*

      Defendants.

_____\

## AFFIDAVIT OF SHAWN R. WEINGAST

SHAWN R. WEINGAST, being duly sworn, deposes and says:

1. I am General Counsel for Best Medical International, Inc., a registered Delaware Corporation (hereafter referred to as "BEST Delaware"), the named Defendant to the above styled case. I have personal knowledge of all of the facts set forth in this affidavit, and, if called to testify in this matter, I could and would competently testify to each of the facts set forth.

2. I am also General Counsel or Corporate Officer for the following Virginia Corporations:

    A. Best Medical International, Inc., ("BEST Virginia"),
    B. Best Theratronics, Inc., and
    C. Brachytherapy Services, Inc. ("BSI").

3. Each of the companies listed above has its principle place of business at 7643 Fullerton Road, Springfield, VA 22153.

4. A true and correct copy of the certificate of incorporation of BSI is attached as Exhibit "A."

5. BSI is a wholly owned subsidiary of BEST Virginia, not BEST Delaware.

6. Best Theratronics, Ltd. purchased the assets of North American Scientific, Inc. ("NASI"), a California Corporation, following a chapter 11 bankruptcy proceeding on April 8, 2009. Best Theratronics, Ltd. is a Canadian federal corporation, fully owned by Best Theratronics, Inc.

7. A true and correct copy of the Order Authorizing the Sale of NASI assets is attached as Exhibit "B."

8. Best Theratronics, Ltd. assigned the NASI assets to BSI on April 16, 2009 prior to the closing for the NASI assets.

9. A true and correct copy of the Resolution of the Best Theratronics, Ltd., Board of Directors executing this assignment is attached as Exhibit "C."

10. BSI did not operate and made no sales or revenues prior to February 11, 2009.


FURTHER AFFIANT SAYETH NOT.


I signed this affidavit on _March 6, 2012_____ at Springfield, Virginia

_____

Shawn R. Weingast
General Counsel




COMMONWEALTH OF VIRGINIA
CITY OF SPRINGFIELD / COUNTY OF FAIRFAX

Subscribed and sworn to before me by Shawn R. Weingast this 6th day of March, 2012.

_____

Dorothy M. Ellis, Notary Public

My commission expires:  October 31, 2012

00075930-1



## Commonwealth of Virginia

### STATE CORPORATION COMMISSION

Richmond, February 11, 2009

This is to certify that the certificate of incorporation of

## Brachytherapy Services, Inc.

was this day issued and admitted to record in this office and that the said corporation is authorized to transact its business subject to all Virginia laws applicable to the corporation and its business. Effective date: February 11, 2009



State Corporation Commission
Attest:

Clerk of the Commission

CIS0313



**EXHIBIT**

**A**

1  FOX ROTHSCHILD LLP
   1800 Century Park East, Suite 300
2  Los Angeles, California 90067-3005
   Telephone: 310.598.4150
3  Facsimile: 310.556.9828

4  Josefina Fernandez McEvoy (SBN 147138)
   jfmcevoy@foxrothschild.com
5  Sarah Korobkin (SBN 214236)
   skorobkin@foxrothschild.com
6
   Attorneys for Creditor BEST THERATRONICS, INC.
7

8

9                    UNITED STATES BANKRUPTCY COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                   SAN FERNANDO VALLEY DIVISION

12

13  In re:                              Case No.:  1:09-bk-12675-MT

14

15  NORTH AMERICAN SCIENTIFIC, INC.,    ORDER AUTHORIZING (1) THE SALE OF
                                        CERTAIN ASSETS OF THE ESTATE FREE
16  a California corporation,           AND CLEAR OF LIENS, CLAIMS, AND
                                        INTERESTS PURSUANT TO  11 U.S.C. § 363;
17                                      (2) THE ASSUMPTION AND ASSIGNMENT
                                        OF CERTAIN EXECUTORY CONTRACTS;
18                                      AND (3) THE REJECTION OF THE
                                        DEBTOR'S INTERESTS, IF ANY, IN
19                Debtor                CERTAIN EXECUTORY CONTRACTS

20

21        Upon the Court's consideration of the motion of North America Scientific, Inc. (the

22  "Debtor"), a California corporation, debtor and debtor-in-possession in the above-captioned

23  chapter 11 case, for entry of an Order Authorizing (1) the Sale of Certain Assets of the Estate Free

24  and Clear of Liens, Claims and Interests pursuant to  11 U S.C § 363; (2) the Assumption and

25  Assignment of Certain Executory Contracts; and (3) the Rejection of the Debtor's Interests, if any,

26  in Certain Executory Contracts (the "Motion"); the objections filed with the Court or stated on the

27  record of the hearing on the Motion (collectively, the "Objections"); the statements and arguments

28

562582.1 (B15891.001)                           2
                          ORDER AUTHORIZING (1) THE SALE OF CERTAIN ASSETS OF
                              THE ESTATE FREE AND CLEAR OF LIENS

CLARK & TRE... .HICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

EXHIBIT

B

tabbies

1   of counsel and the evidence presented at the hearing; the Court hereby finds as follows:

2      A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief

3   described herein pursuant to 28 U.S.C. §§ 157 and 1334.

4      B.      Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5      C.      The Motion and related determinations are core matters under 28 U. S.C.

6   §§ 157(b)(2)(A), (M) and (N).

7      D.      The relief granted herein is authorized under 11 U.S.C. §§ 105, 353 and 365, and

8   Bankruptcy Rules 2002, 6004 and 6006.

9      E.      Based on the declarations of service previously filed with the Court, notice of the

10  Motion was adequate and reasonable under the circumstances and no further notice concerning the

11  Motion and the relief granted herein is required.

12     F.      The Debtor did not receive an Initial Overbid[1] from a Qualified Bidder concerning

13  the Assets that are the subject of the Motion at or prior to the Bid Deadline; hence, the Auction

14  was not held and the hearing on the Motion proceeded with respect to the Asset Purchase

15  Agreement executed with Best Theratronics, Inc., a Virginia corporation (the "Buyer") on or about

16  March 11, 2009, as amended hereby (the "APA"), resulting in Buyer being the successful bidder

17  on the Assets.

18     G.      The Buyer submitted satisfactory evidence showing its financial wherewithal to

19  consummate the sale as set forth in the APA, and make future payments contemplated under the

20  APA and the Executory Contracts that Debtor is assuming and assigning to Buyer. The purchase

21  price for the Assets (as defined in the APA) is $2,000,000.  At the Closing, as an accommodation

22  to the parties, Buyer shall pay $1,200,000 to Silicon Valley Bank by wire transfer for application

23  to Silicon Valley Bank's secured claim against the Debtor, and shall pay $50,000 to the

24  Debtor.  Buyer also shall execute a promissory note in favor of Debtor providing for seven

25  monthly payments of $100,000, commencing one month following the Closing, followed by an

26  eighth and final payment of $50,000 eight months following the Closing.  Until such time as

---

[1] Capitalized terms used herein shall have the meaning ascribed to such terms in the APA or the Motion.

562582.1 (B15891.001)

CLARK & TRE·,rHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1   Silicon Valley Bank's secured claim against the Debtor is fully satisfied, each monthly installment

2   payment shall be made by Buyer, as an accommodation to the parties, to Silicon Valley Bank for

3   application to Silicon Valley Bank's secured claim against the Debtor.

4         H.      The Bidding Procedures and the hearing on the Motion provided a full, fair and

5   reasonable opportunity for any person or entity to make a higher and better offer to purchase the

6   Assets (as defined in the APA).  The sale was conducted in a non-collusive and fair manner,

7   without fraud or deceit, in good faith and is the result of an arms' length transaction between the

8   Debtor and the Buyer.  Accordingly, the Buyer is a good faith purchaser within the meaning of 11

9   U.S.C. § 363(m) and neither the Debtor nor the Buyer have engaged in any conduct that would

10   permit the sale transaction to be avoided under 11 U.S.C. § 363(n).

11         I.      The Debtor provided notice of this final hearing as directed by the Court.

12         J.      The Debtor is a party to a patent license with IdeaMatrix (the "SurTrak License")

13   pursuant to which the Debtor has manufactured products known as SurTrak pre-plugged needles

14   and strands (the "SurTrak Products").

15         K.      The Debtor is not a party to any other intellectual property licenses relating to the

16   SurTrak Products.

17         L.      The Debtor does not intend to and is not selling or transferring to Buyer the

18   SurTrak License or any intellectual property or rights thereunder, or the SurTrak Products.

19         M.      The Buyer does not intend to and is not buying the SurTrak License or any

20   intellectual property or rights thereunder, or the SurTrak Products.

21         N.      The SurTrak License, including all intellectual property or rights thereunder, and

22   all records and documents relating thereto, including work station manuals, design files, device

23   history records, and quality assurance records containing information about the SurTrak Products,

24   and the SurTrak Products (together, the "SurTrak Assets") are and shall be expressly identified as

25   "Excluded Assets" under the APA.

26         O.      The work station manuals relating to the SurTrak Products are maintained on hard

27   drives or other recording systems that are separated from the Assets, and these will be maintained

28   intact by the Debtor, unmodified in any way.

CLARK & TRE..., HICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

562582.1 (B15891.001)

4

P.     The design files, device history records, and quality assurance records relating to the SurTrak Products are maintained on hard drives where records concerning Assets also are maintained.  Prior to the Closing, the Debtor shall make an electronic copy of those portions of the design files, device history records, and quality assurance records that relate to the SurTrak Products, and shall delete the duplicated information from the hard drives and, to the extent possible, from any other records that constitute Assets.  The Debtor shall maintain possession and control of the electronic copy, subject to the terms of the SurTrak License.

Q.     The SurTrak License shall be rejected as of the Closing of the Sale, which shall be not later than April 15, 2009, and all rights of the Debtor thereunder shall terminate as of that date. Immediately upon rejection, the Debtor shall cease manufacture, sale and delivery of SurTrak Products and shall otherwise comply with the termination-related requirements of the SurTrak License.

R.     Buyer shall have absolutely no interests of any kind in the SurTrak License, and is on notice that it is subject to all intellectual property claims that any of the Objecting Parties may have against Buyer, including but not limited to claims concerning the SurTrak License, the SurTrak Products, and any other Assets or Excluded Assets under the APA.

S.     The Assets purchased by Buyer include machinery and equipment arranged in workstations designed and used by the Debtor to manufacture SurTrak Products.  Prior to delivery of the machinery and equipment to Buyer, the Debtor shall take photographs of each work station from as many angles as appropriate to clearly identify all of the components of each work station, the line-up and order of use of the components of each work station, and the spatial relationships among all of the workstations.  The Debtor shall maintain and preserve the photographs, subject to any requirements of the SurTrak License.

T.     The Transfers of the Assets pursuant to the terms and provisions of the APA shall be valid, legal and effective transfers to the Buyer, free and clear of any and all interests, claims, liens, encumbrances, rights of first refusal (the "Interests") under 11 U.S.C. §§ 105 and 363(b) and (f), but not free and clear of any future claims that may arise with respect to the Assets.

U.     The Debtor may sell the Assets free and clear of any interests under 11 U.S.C.

CLARK & TRE...HICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  § 363(f) because one or more of the standards set forth in Subsections 363(f)(1) – (5) have been

2  satisfied.  In particular, Section 363(f)(2) is applicable as the entities holding Interests consent to

3  the sale of the Assets.  Any holder of an interest that did not object to the Sale Motion is deemed

4  to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).  Any holder of an interest that did

5  object or whose objection has been overruled fall within one or more of the other subsections of

6  Section 363(f) and are adequately protected by having their interest, if any, attach to the cash

7  proceeds from the sale of the Assets (as defined in the APA) against or in which they assert an

8  interest, and with the same validity, in the same order of priority, and to the same extent as existed

9  prior to the sale.

10       V.     The Debtor has demonstrated that approval of the sale, the APA and the

11  transactions contemplated thereby (collectively, the "Sale Transaction") is in the best interest of

12  the estate and the creditors.  The Debtor has shown good and sufficient business justification

13  supporting the sale of the Assets (as defined in the APA) to the Buyer pursuant to 11 U.S.C.

14  § 363(b) as set forth in the Sale Motion and the hearing thereon, and the sale to the Buyer is a

15  reasonable exercise of the Debtor's business judgment.

16       W.     The consideration paid by the Buyer for the Assets (as defined in the APA)

17  constitutes fair and adequate value for the Assets, and the terms and conditions of the APA are fair

18  and reasonable.  Buyer would not have entered into the APA and would not consummate the Sale

19  Transaction, if the Sale Transaction under the APA was not consummated free and clear of any

20  and all Interests except as otherwise stated above in paragraph T.

21       X.     The Debtor has shown that it is an exercise of its sound business judgment to

22  assume and assign the Executory Contracts and Real Estate Leases (as defined in the APA).  By

23  agreement with the lessors under the Real Estate Leases, the Debtor is authorized to assume and

24  assign Real Estate Leases, provided that the Debtor has cured pursuant to the terms of the APA, or

25  provided adequate assurance of cure of any default existing prior to the date hereof under the Real

26  Estate Leases under 11 U.S.C. § 363(b)(1).

27       Y.     The Debtor has satisfactorily provided, pursuant to 11 U.S.C. § 365(b)(1),

28  sufficient evidence of: (i) its ability and willingness to promptly cure its defaults under the

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1   Executory Contracts, and (ii) adequate assurance of future performance by the Buyer under the

2   Executory Contracts to be assumed and assigned to Buyer.

3       Z.      All secured creditors have consented, either expressly or implicitly by the lack of

4   objection to the Motion, to the sale to Buyer.

5       AA.     The sale of the Assets to Buyer, and the granting of the motion, is in the best

6   interest of Debtor, its estate, and all creditors and parties in interest.

7       BB.     The Debtor solicited other and further offers for the purchase of the Assets, but no

8   such offers were received.

9       CC.     Buyer must have at least verbal assurance from the State of California that Buyer

10  can operate the Debtor's business with a verbal medical device license and a properly issued or

11  transferred radioactive materials license before the Closing, otherwise Buyer would not be

12  purchasing a going concern business.

13          **NOW, THEREFORE, IT IS HEREBY ORDERED**, as follows based on the

14  findings and conclusions set forth above and on the record of the hearing on the Motion:

15      1.      The Motion is granted and the Asset Purchase Agreement attached as Exhibit 1

16  hereto is approved in is entirety, except as modified herein, if and only if the Buyer expressly

17  agrees to the following:

18          a.      The 10-day period set forth in Sections 1.1 and 2.4 of the APA shall be

19  deemed to have expired on April 2, 2009.

20          b.      Buyer shall make an earnest money deposit with Debtor's counsel in the

21  sum of $300,000 by April 8, 2009, at 5:00 p.m. PST (the "Deposit").

22          c.      The Closing shall occur on or before April 15, 2009; provided, however,

23  that any issues related to Buyer obtaining the necessary licenses to operate the Debtor's business

24  without disruption are resolved before the Closing.

25          d.      The Deposit shall be refundable to Buyer solely if Buyer does not receive a

26  verbal representation from a duly authorized representative of the State of California that it can

27  operate the Debtor's business on a verbal medical device license, and/or Buyer does not receive

28  written confirmation from the State of California that it has been properly granted or transferred a

CLARK & TRÉ—iTHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

562582.1 (B15891.001)                    7

1   radioactive materials license before the Closing.

2       2.      Objections not withdrawn or addressed by this Order are hereby overruled.

3       3.      Findings of fact shall be deemed conclusions of law and conclusions of law shall be

4   deemed findings of fact as appropriate.

5       4.      Buyer is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy

6   Code.

7       5.      The sale was negotiated in good faith and at arms length and is in the best interest

8   of the estate and the creditors, and a proper exercise of the Debtor's business judgment, and

9   without collusion, fraud, deceit or illegality; hence, the Sale Transaction shall be protected under

10  11 U.S.C. § 363(n).

11      6.      The Assets were adequately marketed and the purchase price represents the fair

12  market value for the assets.

13      7.      Excluded Liabilities.  Section 1.1(bb)(xi) of the APA, "Excluded Assets" shall be

14  modified to read as follows:  and causes of action of Debtor or this bankruptcy estate without

15  limitation, all rights and avoidance claims of Debtor arising under Chapter 5 of the Bankruptcy

16  Code, and any and all claims, counterclaims, demands, and causes of action of Debtor or this

17  bankruptcy estate against any party other than as specified released in this Agreement or the Order

18  approving the sale transaction, including, but not limited to, current or former directors, officers,

19  attorneys, accountants, investment bankers, and other professionals, employees, shareholders or

20  agents of Debtor sounding in tort or otherwise airing under the Bankruptcy Code or applicable

21  state law and any directors and officers insurance policies."

22      8.      Section 1.1(bb)(xii) shall be added to the APA to provide that all SurTrak Assets

23  are "Excluded Assets."

24      9.      The Debtor will use its best efforts to assure that no SurTrak Assets are delivered to

25  Buyer, and Buyer will return or delete, as applicable, any SurTrak Assets of which it obtains

26  possession, whether intentionally or inadvertently;

27      10.    Prior to delivery to Buyer of the machinery and equipment used to manufacture

28  SurTrak Products, the Debtor shall take photographs of each work station from as many angles as

562582.1 (B15891.001)           8

CLARK & TRĚVÁNHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  appropriate to clearly identify all of the components of each work station, the line-up and order of

2  use of the components of each work station, and the spatial relationships among all of the

3  workstations.  The Debtor shall maintain and preserve the photographs for seven years, subject to

4  any requirements of the SurTrak License;

5       11.    Prior to the Closing, the Debtor shall make an electronic copy of those portions of

6  the design files, device history records, workstation manuals, and quality assurance records that

7  relate to the SurTrak Products, and shall delete the duplicated information from the hard drives

8  that are Assets under the APA and, to the extent possible, from any other records that constitute

9  Assets.  The Debtor shall maintain possession and control of the electronic copy, subject to the

10  terms of the SurTrak License;

11       12.    The SurTrak License shall be rejected as of the Closing of the Sale, and all rights of

12  the Debtor to use the License shall terminate as of that date.  Immediately upon rejection, the

13  Debtor shall cease manufacture, sale and delivery of SurTrak Products and shall otherwise comply

14  with the termination-related requirements of the SurTrak License;

15       13.    Buyer shall not make any effort to analyze the delivered machinery and equipment

16  in an effort to specifically and intentionally discern protected information about the manufacture

17  or other protected information about the SurTrak Products;

18       14.    The requirement of a stay pursuant to Rule 6004(g) and 6006(d) of the Bankruptcy

19  Rules is waived;

20       15.    The Debtor is authorized to execute all documents and take any actions reasonably

21  necessary to effectuate the sale, including, but not limited to, the escrow closing, sale agreement,

22  bill of Sale;

23       16.    The cure claims identified on Exhibit "2" are hereby fixed in the amounts set forth

24  on Exhibit "2" as lodged on the case docket as docket entry number 122;

25       17.    The Debtor is authorized to assume and assign to Buyer the executory contracts

26  identified on Exhibit "2" as lodged on the case docket as docket entry number 122;

27       18.    The Debtor's interest in the executory contract and ancillary agreements entered

28  into between the Debtor and Administaff Companies is hereby rejected, effective as of the closing

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  of the sale of the Assets;

2        19.    The Debtor's interest, if any, in any and all Executory Contracts entered into

3  between the Debtor and all other parties identified on Exhibit "3" as lodged on the case docket as

4  docket entry number 122 (other than Administaff and the Objecting Parties) is hereby rejected,

5  effective on March 12, 2009, with Debtor making any related postpetition administrative priority

6  expenses;

7        20.    The terms of this order shall be binding on Buyer and its successors, the Debtor and

8  its successors, and all other parties-in-interest in the Debtor's case, including any trustee or

9  examiner later appointed in this case or upon conversion of this case to Chapter 7 of the

10  Bankruptcy Code.

11        21.    The Court shall retain jurisdiction to interpret, implement, and enforce the

12  provisions of, and resolve any disputes arising under or related to this Order and the APA, all

13  amendments thereto, any waivers and consents thereunder and each of the agreements executed in

14  connection therewith.

15  IT IS ORDERED

16  ###

17

18

19

20

21

22

23

24

25

26  DATED: April 8, 2009

27

28

*United States Bankruptcy Judge*

562582.1 (B15891.001)

10

ORDER AUTHORIZING (1) THE SALE OF CERTAIN ASSETS OF
THE ESTATE FREE AND CLEAR OF LIENS

CLARK & TRE... iHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

| | |
|---|---|
| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
| Debtor(s). | CASE NUMBER 1:09-BK-12675-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 800 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90017

A true and correct copy of the foregoing document described as  ORDER AUTHORIZING (1) THE SALE OF CERTAIN ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO  11 U.S.C. § 363; (2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (3) THE REJECTION OF THE DEBTOR'S INTERESTS, IF ANY, IN CERTAIN EXECUTORY CONTRACTS will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 7, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

<div align="right">X-Service information continued on attached page</div>

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ___April 7, 2009___ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

<div align="right">X-Service information continued on attached page</div>

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

<div align="right">☐ Service information continued on attached page</div>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 7, 2009 | Iris Palmer | /s/ Iris Palmer |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

562582.1 (B15891.001)

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:09-BK-12675-MT |

I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Katherine Bunker                   kate.bunker@usdoj.gov,

Jacquelyn H. Choi                  jacquelyn.choi@dlapiper.com

Garrick A. Hollander               jmartinez@winthropcouchot.com

Jennifer L. Nassiri                jennifer.nassiri@dlapiper.com

Vincent J. Novack                  vnovak@mofo.com

Leo D. Plotkin                     lplotkin@lsl-la.com

United States Trustee (SV)         upstpregion16.wh.ecf@usdoj.gov

Marc J. Winthrop                   pj@winthropcouchot.com

562582.1 (B15891.001)

ORDER AUTHORIZING THE (1) SALE OF CERTAIN ASSETS OF THE ESTATE FREE
AND CLEAR OF LIENS, CLAIMS, AND INTERESTS

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | | CHAPTER 11 |
|---|---|---|
| | Debtor(s). | CASE NUMBER  1:09-BK-12675-MT |

## II. SERVED BY U.S. MAIL

**Kimberly S.  Winick**
CLARK & TREVITHICK
800 Wilshire Boulevard, Twelfth Floor
Los Angeles, California  90017

Stephen Gould Corporation
Attn: Cheryl Eckerdt
45541 Northport Loop West
Fremont, CA 94538
**Silicon Valley Bank**
Attn: Mark Turk
5820 Canoga Ave, #210
Woodland Hills, CA 91367

Robert W. Baird & Co.
777 East Wisconsin Ave.
Suite 2800
Milwaukee, WI 53202`
Gauthier Non-Ferrous Products, Inc.
12355 April Street
Montreal, Quebec Canada QC
H1B5L8
Securities Exchange Comm
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036

**Daniel H. Reiss**
Levene, Neale, Bender, Rankin
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
**Gibson, Dunn & Crutcher LLP**
Attn: C.D. Dusseault
333 S. Grand Ave.
Los Angeles, CA 90071-3197
**Silicon Valley Bank**
Attn: Authorized Agent
3003 Tasman Dr.
Santa Clara, CA 95054

Escape Velocity Systems, Inc.
2520 55th Street
Suite 204
Boulder, CO 80301
Scientific Alloys Corp
P. O. Box 223
Clifton NJ 07015

562582.1 (B15891.001)

1

2

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:09-BK-12675-MT |

3

4

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**

5  L. Michael Cutrer
Email:  Michael.cutrer@yahoo.com

6

Ideal Matrax, Inc.
7  Richard Terwilliger
Email: idealmatrix@aol.com

8

9  Mr. Richard Terwilliger
Richard Terwilliger
10  Email: idealmatrixc@aol.com

11  Eckert & Ziegler CNL Scientific
Resource
12  Karen Haskins
Email: Karen.haskins@ezag.com

13

Connecticuit Packaging Materials
14  Rincy Smith
Email: rindys@ctpkg.com
15  MKA Systems Consulting, Inc.
Janet Johnson
16  Email: jjohnson@mkasystems.com
Sterogenics US
17  Sheryl Jungbult
Email:  jzugsmith@sterigenics.com
18  Silicon Valley Bank
Mark Terk
19  mturk@svb.com

Gibson Dunn & Crutcher LLP
Christopher D. Dusseault, Esq.
Email:
CDusseault@gibsondunn.com
MDS Nordian, a Division of
MDS
Mr. Gilles Quintal
Email:
gilles.QUINTAL@mdsinc.com
Day Pitney LLP
Markl Russak
Email:
mrussak@daypitney.com
Automation GT, Inc.
Peter Gottaschilch
Email:
pgottschlich@automationgt.co
m
Pacific Radiation Corp
Mr. Dan Gollnick, Ph.D.
Emial:  dr_dan@pacificrad.com
McDermott, Will & Emery LLP
Mr. Marc E. Brown, Esq.
Emial: meb@mwe.com
Hantel Technologies
Bill Booth
Email: bbooth@hanteltech,com

20

21

22

23

24

25

26

27

28

562582.1 (B15891.001)

ORDER AUTHORIZING THE (I) SALE OF CERTAIN ASSETS OF THE ESTATE FREE
AND CLEAR OF LIENS, CLAIMS, AND INTERESTS

| | |
|---|---|
| 1 | **SERVICE LIST FOR ENTERED ORDER** |
| 2 | I.     The following parties were listed on the Court's NEF system as of April 8, 2009, and were |
| 3 | electronically served by the system as such: |
| 4 | • Todd M Arnold    tma@lnbrb.com |
| 5 | • Katherine Bunker    kate.bunker@usdoj.gov |
| 6 | • Alan C Chen |
| 7 | • Jacquelyn H Choi    jacquelyn.choi@dlapiper.com |
| 8 | • Daniel Denny    ddenny@gibsondunn.com |
| 9 | • G Larry Engel    lengel@mofo.com |
| 10 | • Garrick A Hollander    jmartinez@winthropcouchot.com |
| 11 | • Robert E Huttenhoff    rhuttenhoff@shbllp.com |
| 12 | • Paul D Marotta    Paul@tclg.com |
| 13 | • Josefina F McEvoy    jparrott@foxrothschild.com |

I.     The following parties were listed on the Court's NEF system as of April 8, 2009, and were electronically served by the system as such:

- Todd M Arnold     tma@lnbrb.com
- Katherine Bunker     kate.bunker@usdoj.gov
- Alan C Chen
- Jacquelyn H Choi     jacquelyn.choi@dlapiper.com
- Daniel Denny     ddenny@gibsondunn.com
- G Larry Engel     lengel@mofo.com
- Garrick A Hollander     jmartinez@winthropcouchot.com
- Robert E Huttenhoff     rhuttenhoff@shbllp.com
- Paul D Marotta     Paul@tclg.com
- Josefina F McEvoy     jparrott@foxrothschild.com
- Jennifer L Nassiri     jennifer.nassiri@dlapiper.com
- Vincent J Novak     vnovak@mofo.com
- Leo D Plotkin     lplotkin@lsl-la.com
- Daniel H Reiss     dhr@lnbrb.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov
- Kimberly S Winick     kwinick@clarktrev.com
- Marc J Winthrop     pj@winthropcouchot.com

II.     Debtor's counsel is instructed and ordered to serve all relevant parties in accordance with the Order Granting Debtor's Emergency Motion to Limit Notice of Certain Matters Requiring Notice to Creditors Pursuant to Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure [docket no.22].

562582.1 (B15891.001)

RESOLUTION OF THE BOARD OF DIRECTORS
OF
BEST THERATRONICS, LTD.
AND
ACTION OF ITS SOLE SHAREHOLDER

This 16th day of April 2009, the board of directors of Best Theratronics, Ltd., a Canadian federal corporation by the unanimous written consent of the Company's board of directors, and the written consent of the Company's sole shareholder Best Theratronics, Inc. a Virginia corporation do hereby declare the following:

WHEREAS on March 11, 2009 the Company entered into that certain Asset Purchase Agreement ("APA") with North American Scientific, Inc., a California corporation ("Seller") and its parent North American Scientific, Inc., a Delaware corporation ("Parent");

WHEREAS the APA provides for Company to enter into ancillary documents, including but not limited to a Mutual License Agreement; Assignment of Intellectual Property; Mutual Release and other ancillary documents provided for in the APA or convenient for the completion of the transaction (the "Ancillary Documents") (the APA and the Ancillary Documents together the "Agreement");

WHEREAS Seller filed for bankruptcy protection with the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division ("Bankruptcy Court") Case No 1:09-BK-12675-MT pending under Chapter 11 of title 11 of the United States Code §§ 101 et seq.;

WHEREAS on April 8, 2009, the Bankruptcy Court entered its "Order Authorizing (1) the Sale of Certain Assets of the Estate Free and Clear of Liens, Claims,  and Interests pursuant to 11 U.S.C. § 363; (2) the Assumption and Assignment of Certain Executory Contracts; and (3) the Rejection of the Debtor's Interests, if any, in Certain Executory Contracts" (the "Asset Sale Order") which, among other things, approved the APA and transfer of assets from Seller to Company.

WHEREAS after review of the terms and conditions of the Agreement the Board of Directors is of the good faith opinion that the contemplated transaction is in the best interest of the Company;

WHEREAS after further review, the Board of Directors is of the good faith opinion that the transfer of all rights and liabilities accruing to Company under the Agreement to Brachytherapy Services, Inc. a Virginia corporation ("BSI") under common ownership and control with Company is in the best interest of Company

NOW THEREFORE, the Board of Director's of Company and its sole shareholder do hereby declare as follows:

EXHIBIT

C

RESOLVED, that the Agreement in the form of Exhibit A is hereby approved, and Shawn Weingast, acting in the capacity of Assistant Secretary of Company is authorized and instructed, for and in the name of Company, to execute and deliver the Agreement in substantially the form as contained in Exhibit A, with such changes thereto as he may approve, such approval to be conclusively evidenced by the execution and delivery thereof.

RESOLVED FURTHER, that the officers of Company be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of this corporation, to take or cause to be taken any and all actions, including, without limitation, the execution, acknowledgment, filing, amendment and delivery of any and all papers, agreements, documents, instruments and certificates, and the payment of such sums, as such officers may deem necessary or advisable to carry out and perform the obligations of Company under such Agreement and consummate the transactions contemplated therein.

RESOLVED FURTHER, that the officers of Company (including Shawn Weingast) be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of Company to transfer all assets, rights, liabilities, benefits and obligations of any kind accruing in connection with the Agreement to BSI,

RESOLVED FURTHER, that the officers of Company (including Shawn Weingast) be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of Company that to take or cause to be taken any and all actions, including, without limitation, the execution, acknowledgment, filing, amendment and delivery of any and all papers, agreements, documents, instruments and certificates, and the payment of such sums, as such officers may deem necessary or advisable to carry out and perform the transfer of Company's obligations under the Agreement to BSI.

RESOLVED, that the officers of Company are, and each acting alone is, hereby authorized to do and perform any and all such acts, including execution of any and all documents and certificates, as such officers shall deem necessary or advisable, to carry out the purposes and intent of the foregoing resolutions.

RESOLVED FURTHER, that any actions taken by such officers prior to the date of the foregoing resolutions adopted hereby that are within the authority conferred thereby are hereby ratified, confirmed and approved as the acts and deeds of this corporation.

BOARD OF DIRECTORS

_____
Krishnan Suthanthiran

_____
Sam Schwisberg

RESOLVED, that the Agreement in the form of Exhibit A is hereby approved, and Shawn Weingast, acting in the capacity of Assistant Secretary of Company is authorized and instructed, for and in the name of Company, to execute and deliver the Agreement in substantially the form as contained in Exhibit A, with such changes thereto as he may approve, such approval to be conclusively evidenced by the execution and delivery thereof.

RESOLVED FURTHER, that the officers of Company be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of this corporation, to take or cause to be taken any and all actions, including, without limitation, the execution, acknowledgment, filing, amendment and delivery of any and all papers, agreements, documents, instruments and certificates, and the payment of such sums, as such officers may deem necessary or advisable to carry out and perform the obligations of Company under such Agreement and consummate the transactions contemplated therein.

RESOLVED FURTHER, that the officers of Company (including Shawn Weingast) be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of Company to transfer all assets, rights, liabilities, benefits and obligations of any kind accruing in connection with the Agreement to BSI,

RESOLVED FURTHER, that the officers of Company (including Shawn Weingast) be, and each acting alone is, hereby authorized, empowered and directed, for and on behalf of Company that to take or cause to be taken any and all actions, including, without limitation, the execution, acknowledgment, filing, amendment and delivery of any and all papers, agreements, documents, instruments and certificates, and the payment of such sums, as such officers may deem necessary or advisable to carry out and perform the transfer of Company's obligations under the Agreement to BSI.

RESOLVED, that the officers of Company are, and each acting alone is, hereby authorized to do and perform any and all such acts, including execution of any and all documents and certificates, as such officers shall deem necessary or advisable, to carry out the purposes and intent of the foregoing resolutions.

RESOLVED FURTHER, that any actions taken by such officers prior to the date of the foregoing resolutions adopted hereby that are within the authority conferred thereby are hereby ratified, confirmed and approved as the acts and deeds of this corporation.

**BOARD OF DIRECTORS**

_____
Krishnan Suthanthiran

_____
Sam Schwisberg

SOLE SHAREHOLDER OF COMPANY

BEST THERATRONICS, INC.

By: Krishnan Suthanthiran
Its: Sole Director/Sole Shareholder

**EXHIBIT "B"**

## Joseph Ullo

| | |
|---|---|
| **From:** | Joseph Ullo |
| **Sent:** | Monday, April 23, 2012 4:59 PM |
| **To:** | 'wsnewbern@msn.com'; 'Wiley Horton' |
| **Cc:** | 'Bill Hollimon'; Ed Steinmeyer; O'Neal Mistry; James Brady |
| **Subject:** | Draft Discovery Plan for Discussion |
| **Attachments:** | Final Proposed Discovery Plan (00090092).DOCX |

| | |
|---|---|
| **Follow Up Flag:** | Worldox |

Scott:

I followed up with our client last week and today and we have prepared the following proposed discovery plan for Plaintiffs' consideration.

Shawn Weingast, Corporate Counsel for Best Medical, will be the Rule 30(b)(6) witness that you and I discussed last week. He can be available for deposition after May 14 through the end of the discovery period with the exception of May 23 through May 25.

I will be in the office tomorrow if you want to discuss, finalize and to file same with the Court.

Have a good evening.

Thanks,


**F. Joseph Ullo, Jr.**
Attorney | Registered Patent Attorney
**Lewis, Longman & Walker, P.A.**

315 Calhoun Street, Suite 830
Tallahassee, Florida 32301
jullo@llw-law.com
(t) 850.222.5702
(f) 850.224.9242
vCard | Website | Bio

Member of the Environmental Law Network

Lewis, Longman & Walker, P.A. is proud to be an ABA-EPA Law Office Climate Challenge Partner. Think before you print!
The information contained in this transmission may be legally privileged and confidential. It is intended only for the use of the recipient(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that you received this communication in error, and that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply email and delete the message and all copies of it.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**In Re WORLD WIDE MEDICAL TECH.
LLC., et al., patent litigation
consolidated cases,**

**CASE NO. 4:11-cv-614/RS-CAS**

_____/

## JOINT PROPOSED DISCOVERY PLAN ON PERSONAL JURISDICTION

Plaintiffs, WORLD WIDE MEDICAL TECHNOLOGIES, LLC, ADVANCED CARE MEDICAL, INC. and BRACHYSCIENCES, INC. and Defendant, BEST MEDICAL INTERNATIONAL, INC., in response to this Court's Order (Doc. 71) have, pursuant to Fed.R.Civ.P. 26(f) and Local Rule 26.2, agreed on the following dates and discovery plan concerning the sole factual issue of the Court's jurisdiction over Defendant:

| DEADLINE OR EVENT | AGREED DATE |
|---|---|
| **Discovery Deadline** | June 8, 2012 |
| **-Written Discovery to be Served on or before (pursuant to Fed.R.Civ.P. 33, 34, and 36 as modified herein)** | May 4, 2012 |
| **-Oral Discovery completed on or before (pursuant to Fed.R.Civ.P. 30)** | June 8, 2012 |
| **Plaintiffs' Second Response to the Motion to Dismiss (Doc. 59)** | June 22, 2012 |
| **Defendant's Reply** | July 6, 2012 |

**Agreed Discovery Plan on Personal Jurisdiction for Plaintiffs and Defendant**

      **A.**      **Certificate of Interested Persons and Corporate Disclosure Statement**

Every party that has appeared in this action to date has filed and served a Certificate of Interested Persons and Corporate Disclosure Statement, which remains current:

    __√___ Yes          _____ No

Amended Certificate will be filed by _____ (party) on or before _____ (date).

      **B.**     **Discovery Not Filed  —**

The parties shall not file discovery materials with the Clerk except as provided in Local Rule 26.2.

      **C.**     **Discovery Plan  —**

In propounding and responding to discovery, the parties are directed to consult and comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Florida.

      **D.**     **Limits on Discovery  —**

Absent leave of Court or stipulation, the parties may take no more than three (3) depositions per side (not per party). Absent leave of Court or stipulation, the parties may

serve no more than twenty-five interrogatories, including sub-parts. The parties may agree by stipulation on other limits on discovery. The Court will consider the parties' agreed dates, deadlines, and other limits in entering the scheduling order. Fed.R.Civ.P. 29. In addition to the deadlines in the above table, the parties have agreed to further limit discovery as follows:

1.    Depositions

2.    Interrogatories

3.    Document Requests

4.    Requests for Admissions

5.    Supplementation of Discovery

**E.    Discovery Deadline   —**

Each party shall timely serve discovery requests so that the rules allow for a response prior to the discovery deadline. The Court may deny as untimely all motions to compel filed after the discovery deadline. In addition, the parties agree as follows:

**F.      Other Matters Regarding Discovery —**

Date: _____

Signature of Counsel:

_____     _____


_____     _____


_____     _____


_____     _____

**EXHIBIT "C"**

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

In Re WORLD WIDE MEDICAL
TECHNOLOGIES, LLC; et al., patent
litigation consolidated cases,

CASE NO.:  4:11-cv-00614-RS-CAS

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION,
## FIRST INTERROGATORIES, AND FIRST ADMISSIONS UPON
## DEFENDANT BEST MEDICAL INTERNATIONAL, INC.

COME NOW Plaintiffs WORLD WIDE MEDICAL TECHNOLOGIES, LLC; ADVANCED CARE MEDICAL, INC.; and BRACHYSCIENCES, INC., by and through undersigned counsel, and pursuant to Rules 33, 34, and 36, Fed. R. Civ. P., request that the Defendant BEST MEDICAL INTERNATIONAL, INC. answer the following *First Interrogatories*; *First Requests for Production of Documents*; AND *First Admissions* set forth below, fully and in writing pursuant to the Federal Rules of Civil Procedure and the Court's Order of April 25, 2012, approving the Joint Discovery Plan, WITHIN THIRTY (30) DAYS or at such other place and time as may be agreed between the parties and deliver said answers and responsive documents to:

> J. Wiley Horton, Esquire
> PENNINGTON, MOORE, WILKINSON,
>   BELL & DUNBAR, P.A.
> 215 S. Monroe Street, 2ᵈ Floor
> Tallahassee, Florida 32301

## INSTRUCTIONS

A.    Please produce copies of the documents responsive to the REQUESTS FOR PRODUCTION numbered below, or state why such answer is not forthcoming in accordance with the Federal Rules of Civil Procedure.

B.      Responsive documents should include any and all documents, as defined herein, in the possession, custody or control of DEFENDANT or DEFENDANT'S attorneys, investigators, agents, employees, consultants, subcontractors, or other representatives — regardless of whether or not said documents are actually in the possession of DEFENDANT(s) or their agents.

C.      Please answer the INTERROGATORIES and ADMISSIONS numbered below, or state why such answer is not forthcoming in accordance with the Federal Rules of Civil Procedure.

D.      When the identity of a person, entity, or document is requested, please consult the definition of "identify" below and answer the interrogatory in a manner consistent with that definition and the Federal Rules of Civil Procedure.

E.      If responsive documents are not provided based upon any privilege, identify said privilege, its nature, and the legal and factual basis for said claim of privilege and the documents over which the privilege is claims in a Privilege Log.

F.      If a refusal to answer an Interrogatory, Request For Production, or Admission is stated on the grounds of burdensomeness, identify the number and nature of documents needed to be searched, the location of the documents, and the number of man hours and costs required to conduct the search.

G.      Read the definitions below before responding to the Document Requests.

H.      Unless otherwise specified all Requests For Production are for the Relevant Time Period as defined herein.

## DEFINITIONS

a.      "**Defendant**" and "**Best (Del.)**" mean Defendant BEST MEDICAL INTERNATIONAL, INC., a Delaware for profit corporation incorporated on February 27, 1998,

with main offices located at 7643 Fullerton Road, Springfield, VA together with its principals,

officers, managers, employees, attorneys, agents, accountants, and representatives of any kind.

      b.     "**Best (VA)**" means BEST MEDICAL INTERNATIONAL, INC., a Virginia for

profit corporation incorporated on December 3, 2002, with main offices located at 7643

Fullerton Road, Springfield, VA together with its principals, officers, managers, employees,

attorneys, agents, accountants, and representatives of any kind.

      c.     "**Brachytherapy Services**" means BRACHYTHERAPY SERVICES, INC., a

Virginia for profit corporation, incorporated on February 11, 2009, with main offices located at

7643 Fullerton Road, Springfield, VA together with its principals, officers, managers,

employees, attorneys, agents, accountants, and representatives of any kind.

      d.     "**Theratronics**" means BEST THERATRONICS, INC., a Virginia for profit

corporation, incorporated on February 11, 2009, with main offices located at 7643 Fullerton

Road, Springfield, VA together with its principals, officers, managers, employees, attorneys,

agents, accountants, and representatives of any kind.

      e.     "**Suthanthiran**" means KRISHNAN SUTHANTHIRAN, President and Principal

of the aforementioned Best (Del.), Best (VA), Brachytherapy Services, and Theratronics.

      f.     "**Best Companies**" means any and all entities in which Suthanthiran maintains or

maintained an ownership interest during the relevant time period, including either directly or

indirectly through another entity all affiliates, parents, subsidiaries, joint venture partners, and

minority interests.

      g.     All terms shall have their common and ordinary meanings, unless the context

clearly dictates otherwise.

3

h.      All terms or parties where referenced singularly shall include the plural of said term or party and where referenced in plural shall include the singular of said term or party.

i.      All words of the conjunctive shall be read as including the disjunctive and vice versa.

j.      "**Any**", as used herein, shall be deemed to include and encompass the words "each" and "all".

k.      The term "**you**" and "**your**" means the party or parties to whom this request is addressed, including its division, departments, subsidiaries, affiliates, predecessors, present or former offers, directors, owners, agents, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

l.      The term "**person**" or "**party**" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other business enterprise, governmental body, group of natural persons or the entity.

m.      The term "**identify**" when used with reference to a natural person means:

1)      the full name and address (or, if the current address is not known, the last known address) of the person;

2)      the full name and address of each employer, each corporation of which the person is an officer or director, and each business in which the person is a principal;

3)      the person's present (or, if the present is not known, the last known) position and the position or positions at the time of the act to which the interrogatory answer relates;

4)      each position the person has ever held with you and the date such positions were held; and,

5)      such other information sufficient to provide full identification of the person.

n.      The term "**identify**" when used with a reference to any other entity other than a natural person means:

1)      the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization;

2)      each of the entity's officers, directors, shareholders or other principals; and,

3)      any other available information concerning the existence or identity of the entity.

o.      The term "**identify**" when used with reference to a document or written communication means:

1)      its nature (e.g., letter, telegram, memorandum, charter report or study), date, author, date and place of preparation and the name and address of each addressee;

2)      the identity of each signatory of the document or communication;

3)      the title or heading of the document or communication;

4)      its substance;

5)      its present (or, if the present is not known, the last known) location and custodian;

6)      the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (i) you, and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof; and,

7)      the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

p.      The term "**document**" means any written or graphic or electronic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, and includes the originals, regardless of location, of all documents comprehended within that term as used by Rule 34, Federal Rules of Civil Procedure, and

including without limitation, all typewritten, computer typed, handwritten, printed, microfilmed, photocopied, graphic or recorded material, however produced, as well as all films, tapes, discs, diskettes, non–duplicate copies and transcripts thereof, now or at any time in "your" possession, "custody" or "control;" and, without limiting the generality of the foregoing definition, but for the purposes of illustration only, "document" includes notes, correspondence, memoranda, email, electronic notes, business records, diaries, calendars, address and telephone records, expense records and receipts, drafts, photographs, or other optically recorded, viewable, audible or readable material, tape recordings, or other electromagnetically recorded, viewable, audible or readable material, copies or unavailable originals, computer programs, read–only–memory, erasable–programmable memory, random access memory (whether dynamic or static), and encrypted, encoded or ciphered material, whether prose, statistical, numerical or mixed, including all attachments and supporting or back–up material relied upon, used or from which the "document" was prepared or compiled, or upon which it was based, or to which a reference is made.

q.      The term "**all documents**" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

r.      The term "**communication**" means any oral or written document, statement, email, dialogue, colloquialism, discussion, conversation, agreement, or expression of any kind.

s.      The term "**all communication**" means each and every communication as above defined that is known to you or about which you have any information.

t.      The terms "**know**," "**knowing**," "**knew**," and "**aware of**" mean possession of any fact, documents or any other matter, irrespective of the manner by which such facts, documents

or other matters were obtained and irrespective of the admissibility of such facts, documents or other matter at trial or other proceeding in this or any other action.

u.     The term "**relating to**"; "**concerning**"; and "**regarding**" shall be construed in its broadest sense and shall mean to directly or indirectly describe, set forth, discuss, mention, comment upon, support, contradict or refer to the subject of the topic in question, either in whole or in part.

v.     Unless otherwise specified, the time period for all Interrogatories, Requests for Production, and Admissions is to be assumed all inclusive of the Relevant Time Period, regardless of whether the Interrogatories, Requests for Production, and Admissions are phrased in the present or past tense or both.

w.     "**Relevant Time Period**" **means inclusive from January 1, 2005 to the Present.**

## INTERROGATORIES

**Interrogatory No. 1.**        Identify any and all entities comprising the **"Best Companies,"** as defined above under par. f, including the full name, state and date of organization, line of business and ownership structure during the relevant time period.

**Interrogatory No. 2.**        Identify the person or persons most knowledgeable regarding corporate operations, ownership, sales, marketing, distribution, reimbursement, and personnel for the following, including the relationship between Best (Del.) and Best (VA) and Brachytherapy Services, and between Best Theratronix, Inc. and Best Theratronics Ltd.:

 a.    Best (Del.)
 b.    Best (VA)
 c.    Brachytherapy Services
 d.    Theratronix

**Interrogatory No. 3.**        Identify with full name, state and date of incorporation, and ownership structure all entities comprising the "Team Best$^{TM}$ Companies" as referenced on the company website http://www.teambest.com/, including without limitation any and all affiliates, subsidiaries, joint venture partners, and entities in which a minority interest is held, together with a description of the relationship between the listed entities.

**Interrogatory No. 4.**        If the entities listed in Interrogatory No. 2 are not included in your response to Interrogatory No. 3, identify why this is the case and include a description of the relationship between the listed entities in Interrogatory No. 2 and the "Team Best$^{TM}$ Companies" that are listed at http://www.teambest.com/.

**Interrogatory No. 5.** Identify the person or persons most knowledgeable regarding the relationship between and among the following entities and the entities comprising all of "Team Best™ Companies" including without limitation common ownership, affiliate relationships, parent/subsidiary relationships, and minority interests:

    a.    Best (Del.)
    b.    Best (VA)
    c.    Brachytherapy Services
    d.    Theratronix

**Interrogatory No. 6.** Identify any and all lines of business, including all services offered and products manufactured, consigned, sold, or otherwise distributed, for each of the following entities:

    a.    Best (Del.)
    b.    Best (VA)
    c.    Brachytherapy Services
    d.    Theratronix

**Interrogatory No. 7.** Identify any and all personnel or independent contractors of the "TeamBest™ Companies" and the companies listed in Interrogatory No. 1, that while associated with Best: (i) reside or during the relevant time period have resided in the State of Florida and/or (ii) work or during the relevant time period have worked in the State of Florida, including without limitation all of those individuals assigned to the sales territory that includes the State of Florida.

**Interrogatory No. 8.** Identify all entities, including without limitation hospitals, clinics, physicians, wholesalers, and/or consignees, located in the State of Florida to which a member of the Best Companies distributed product during the relevant time period, including name, address, contact person, and the type and volume of product distributed.

9

**Interrogatory No. 9.**      Identify each of the entity members of TeamBest™ as described at the Best website (http://www.teambest.com/about.html ) that provide "all [customer] needs under one purchase order for external beam therapy and brachytherapy" (See **Exhibit A**) for each of the following products, together with the volume of sales in Florida for each product during the Relevant Time Period:

      a.    Best® Iodine-125 and Palladium-103 seeds
      b.    Brachytherapy accessories
      c.    Radiotherapy and diagnostic imaging devices
      d.    Gold fiducial markers
      e.    Medical physics/QA instrumentation, repair and calibration
      f.    MOSFET patient dosimetry
      g.    Patient immobilization
      h.    Cardiovascular brachytherapy
      i.    R & D, fellowship awards, patient education and clinic marketing

**Interrogatory No. 10.**      Identify the person most knowledgeable concerning the marketing and distribution of (i) Best® Iodine-125 and Palladium-103 seeds, (ii) Gold fiducial markers, (iii) Cardiovascular brachytherapy, and (iv) R & D, fellowship awards, patient education and clinic marketing.

**Interrogatory No. 11.**      Identify any and all recipients as physicians, hospitals, clinics (or other medical treatment facility), wholesaler, or consignee in the State of Florida of the Best® Iodine-125 and Palladium-103 seeds for use in treating patients during the relevant time period, including specifically the name, address, contact, and annual sales volume. See **Exhibits A and B**.

**Interrogatory No. 12.**     Identify the volume of sales and consignment business nationally and in the State of Florida during the relevant time period of the following products, as described at page 3 of **Exhibit B**, offered by Best Companies, including the name, address, contact, and annual sales volume of the treating facility, wholesaler, distributor, or consignee.

**Iodine (I-125)**

| | |
|---|---|
| 10165-1 | I-125 Strands in a Pack |
| 10165-3 | Needle w/I-125 Sources in Strands in a Tray |
| 10165-4 | Needle w/I-125 Loose Sources in a Tray |
| 10165-17 | Needle w/I-125 Loose Sources and Strands in a Tray |
| 10113-11 | Cartridge with I-125 Sources in a Pouch |

**Palladium (Pd-103)**

| | |
|---|---|
| 15165-1 | Pd-103 Strands in a Pack |
| 15165-4 | Needle w/Pd-103 Loose Sources in a Tray |
| 15165-9 | Needle w/Pd-103 Sources in Strands in a Tray |
| 15165-11 | Needle w/Pd-103 Loose Sources and Strands in a Tray |
| 15113-4 | Cartridge with Pd-103 Sources in a Pouch |

Best® Custom Strand (Per Your Prescription)
Best® Standard Strand (10 Seeds/Strand Spaced 1 cm Apart)
Best® Real Time Strand/Needle (Use Our Loader in the OR)
Best® Seeds and Spacers in Pre-loaded Needles
Cartridges
Loose Seeds

**Interrogatory No. 13.**     During the relevant time period, identify any and all individuals and/or entities located in the State of Florida for whom a member of the Best Companies provided R & D, fellowship awards, patient education and clinic marketing, together with the total annual sales volume of the product lines listed in Interrogatory No. 9.

**Interrogatory No. 14.**     Identify when and why *Brachytherapy Services, Inc.* was removed from the list of companies comprising "Team Best" as referenced on the company website "http://www.teambest.com/.

## DOCUMENT REQUESTS

1.       Produce all documents referred to in responding to the Interrogatories and Admissions included herein.

2.       Produce all documents related to the purchase of certain assets of North American Scientific, Inc. ("NASI" ) out of bankruptcy by the newly formed Best entity, Brachytherapy Services, Inc. (C.D. Cal. Case No. 1:09-BK-12675 MT). See attached **Exhibit E**.

3.       Produce all documents sufficient to identify the total annual volume of sales nationally and distributions into the State of Florida of Prospera and stranded Prospera seeds from the filing of the NASI petition on March 11, 2009 to the Present, including any rebranding of the Prospera seeds and strands.

4.       Produce all documents sufficient to identify what portion of the "Best Companies," as defined herein, that Suthanthiran does not own.

5.       Produce all documents sufficient to identify the total volume of business conducted in the State of Florida by the Best Companies during the relevant time period.

6.       Produce all documents sufficient to identify the total annual volume of sales nationally and in the State of Florida in each of the products listed in Interrogatory No. 12 in each year during the relevant time period.

7.       Produce all documents identifying any license or patent under which Brachytherapy Services or another member of the Best Companies manufactured, marketed, sold and/or distributed Prospera and stranded Prospera seeds from March 11, 2009 to the Present, including any rebranding of the Prospera seeds and strands.

## ADMISSIONS

1.      Admit that the following Exhibits attached hereto are copies of web pages constructed by or for any or all the **Best Companies,** identifying products and services offered by "TeamBest<sup>TM</sup> Companies."

<blockquote>
Exhibit A<br>
Exhibit B<br>
Exhibit C<br>
Exhibit D
</blockquote>

2.      Admit that Suthanthiran is the sole owner, directly or indirectly, of the following entities:

<blockquote>
a.      Best (Del.)<br>
b.      Best (VA)<br>
c.      Brachytherapy Services<br>
d.      Theratronix
</blockquote>

3.      Admit that the definitions appearing above in paragraphs a, b, c, d, are accurate. If not identify what changes are necessary to correct the definitions.

4.      Admit that the TeamBest<sup>TM</sup> Companies and related entities are affiliated with each other by the common ownership of Suthanthiran.

5.      Admit that the TeamBest<sup>TM</sup> Companies and related entities offer or have offered for sale and distribution nationally and in the State of Florida the products listed in **Exhibits A and B**.

6.      Admit that the TeamBest<sup>TM</sup> Companies and related entities offer or have offered for sale and distribution nationally and in the State of Florida the Prospera seed and stranded product acquired from NASI. See **Exhibit E**.

7.      Admit that the TeamBest<sup>TM</sup> Companies and related entities, including Brachytherapy Services, continued to produce Prospera seed product and SurTrak product, including rebranding, after April 8, 2009.

8.    Admit that after April 8, 2009 field sales representatives for the TeamBest[TM] Companies and related entities, including Brachytherapy Services, advised former customers of NASI's Prospera seed product and SurTrak product that they would continue to receive these products without interruption.

Respectfully submitted,


   /s/ W. Scott Newbern          
W. Scott Newbern
wsnewbern@msn.com
W. Scott Newvern, P.L.
2982 East Giverny Circle
Tallahassee, Florida 32309
Phone: 850-591-1707; Fax: 850-894-0871

Catherine H. McElveen (SC Bar No. 76725)
kmcelveen@rpwb.com
James C. Bradley (SC Bar No. 16611)
jbradley@rpwb.com
Michael J. Brickman (SC Bar No. 000874)
mbrickman@rpwb.com
Nina H. Fields (SC Bar No. 68294)
nfields@rpwb.com
Richardson, Patrick, Westbrook & Brickman, LLC
1017 Chuck Dawley Blvd. (29464)
Post Office Box 1007
Mount Pleasant, South Carolina 29465
Phone: 843-727-6500; Fax: 843-881-6183

J. Wiley Horton (FL Bar No. 59242)
wiley@penningtonlaw.com
Pennington, Moore, Wilkinson, Bell & Dunbar, P.A.
215 S. Monroe Street, 2nd Floor
Tallahassee, FL 32301
Phone: 850-222-3533; Fax: 850-222-2126

Guy M. Burns (FL Bar No. 0160901)
guyb@jpfirm.com
Johnson, Pope, Bokor, Ruppel & Burns, LLP
403 East Madison Street, Suite 400
Tampa, Florida 33602
Phone: 813-225-2500; Fax: 813-223-7118

**Counsel for Plaintiffs World Wide Medical
Technologies, LLC; Advanced Care Medical, Inc.; and
Brachysciences, Inc.**

Dated: May 4, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2012, a copy of the foregoing was served by email and regular U.S. Mail upon the following:

Woodrow H. Pollack
woodrow.pollack@gray-robinson.com
Gray Robinson P.A.
201 N. Franklin Street, Suite 2200
Tampa, Florida 33602

David J.F. Gross
david.gross@faegrebd.com
Theodore M. Budd
ted.budd@faegrebd.com
Timothy E. Grimsrud
tim.grimsrud@faegrebd.com
Calvin L. Litsey
calvin.litsey@faegrebd.com
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402

**Counsel for Defendant Coloplast, Corp.**

James E. Foster
james.foster@akerman.com
Brandon W. Banks
brandon.banks@akerman.com
Akerman Senterfitt LLP
420 S. Orange Avenue, Suite 1200
Orlando, Florida 32801

**Counsel for Defendant Oncura, Inc.**

James P. Judkins (FL Bar No. 174168)
jjudkins@readyfortrial.com
Larry D. Simpson (FL Bar No. 176070)
lsimpson@readyfortrial.com
Judkins, Simpson, High & Schulte
Post Office Box 10368
Tallahassee, Florida 32302-2368
Phone: 850-222-6040; Fax: 850-561-1471

Amanda M. Hollis
amanda.hollis@kirkland.com
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654

Steven Cherny
steven.cherny@kirkland.com
Leslie M. Schmidt
leslie.schmidt@kirkland.com
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

**Counsel for Defendant C.R. Bard, Inc.**
William R. Mabile, III
wmabile@ackalaw.com
Andrews, Crabtree, Knox & Andrews, LLP
1558 Village Square Blvd.
Tallahassee, Florida 32309

**Counsel for Defendant Johnson & Johnson**

Edwin A. Steinmeyer
esteinmeyer@llw-law.com
F. Joseph Ullo, Jr.
jullo@llw-law.com
Lewis, Longman & Walker, P.A.
315 S. Calhoun Street, Suite 830
Tallahassee, Florida 32301

O'Neal R. Mistry
oneal@teambest.com
Best Medical International, Inc.
7643 Fullerton Road
Springfield, Virginia 22153

**Counsel for Defendant Best Medical
International, Inc.**

Dated: May 4, 2012

17

Exhibit "A"



one world ▸ one source ▸ the best



SEARCH

▸ HOME

▸ OUR PRODUCTS

▸ APPLICATIONS

▪ ABOUT US

▸ TEAMBEST™

▸ G.P.O. / PARTNERS

▸ NEWS

▸ TESTIMONIALS

▸ PUBLICATIONS

▸ CAREERS

▸ INFORMATION REQUEST

▸ CONTACT US

## our commitment

For 30 years, Best Medical has served the medical community with the highest quality products and unparalleled customer service. Our brachytherapy seeds, gold fiducial markers, supplies, accessories and exam equipment exemplify our commitment to uncompromised quality and safety.

Best Medical International now encompasses a family of trusted companies and organizations with a proven track record of innovation, quality and service in external beam radiation therapy, brachytherapy and vascular brachytherapy solutions. Our aim is to be the one partner that clinicians turn to for all their radiotherapy and oncology product and service requirements. TeamBest™ can provide all your needs under one purchase order for external beam therapy and brachytherapy including:



• Best® Iodine-125 and Palladium-103 seeds
• Brachytherapy accessories
• Radiotherapy and diagnostic imaging devices
• Gold fiducial markers
• Medical physics/QA instrumentation, repair and calibration
• MOSFET patient dosimetry
• Patient immobilization
• Cardiovascular brachytherapy
• R & D, fellowship awards, patient education and clinic marketing

We welcome your ideas and feedback as we work for you and your patients. Please call us and tell us how we can serve you better, now and in the future.

1-800-336-4970

## our mission

Everyone deserves the best healthcare. Our goal is to work with medical professionals to provide the Best products and services. As a leader in innovative technology, our mission is to uphold our reputation for excellence in the healthcare field by developing, manufacturing and delivering cost-effective, high quality products to benefit patients around the world.



## our corporate values

• Honor the dignity and uniqueness of each person
• Embrace the spirit of cooperation and teamwork for which Best Medical is known
• Practice and promote open and honest communication
• Listen to others and remain open to new ideas at all times

About Best Medical



© 2006-2012 Best Medical International, Inc. (TeamBest™)
7643 Fullerton Rd., Springfield, Virginia 22153 USA | Toll free: 800-336-4970
All Rights Reserved

Exhibit "B"

# Iodine-125 and Palladium-103

*Patented Double Wall Best® Iodine-125 Source*

## Model # 2301

**Best® Iodine-125 and Best® Palladium-103 Seeds:**

- Double Wall Encapsulation
- Traceable to NIST$_{1999}$ Calibration Revised for 2000
- Sterile Absorbable Strands (Customer's Prescription)
- Sterile, Pre-Loaded Needles (Customer's Choice of Needles)
- Loaded in Mick Cartridges, Sterile or Non-Sterile
- Loose Seeds

**5 mm Seeds — 5 mm Spacers**

- Seeds and spacers are the same length (5mm). Double wall encapsulation and uniform wall thickness with superior dose distribution. Consistent quality, and seeds fit Mick cartridges.
- Excellent visualization with Ultrasound, X-ray, Fluoro, CT and MRI. **Real time dosimetry possible with Best® seeds**.
- Complies with AAPM's dosimetric prerequisites

*Patented Double Wall Best® Palladium-103 Source*

## Model # 2335



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com

*Best*®

*healthcare for everyone*

# Best® Iodine-125 and Best® Palladium-103 Sources

- Patented Double Wall Titanium Encapsulation with uniform wall thickness
- Tungsten Marker—excellent images of source in ultrasound, X-ray, CT, MRI, and fluoro—far superior to other commercially available sources
- Source Calibration traceable to $NIST_{1999}$ Calibration revised for 2000
- Sources and spacers are the same length (5.0 mm nominal) and diameter (0.8 mm nominal), fitting Mick cartridge snugly
- Custom made high quality spacers and Mick cartridges provided at no cost
- Sources can be provided as loose seeds; loaded in needles with spacers, sterile; loaded in strands, sterile; preloaded in Mick cartridges

**Patented Double Wall Best® Iodine-125 Source (Model 2301)**

| | |
|---|---|
| Source Trade Name: | **Best® Iodine Source** |
| Marker: | **Tungsten** |
| Model #: | **2301** |
| Dose Rate Constant: | **(NIST 1999 with 2000 modification)** |
| External Length: | **5 mm (Nominal)      1.02 cGy/hr/U** |
| External Diameter: | **0.8 mm (Nominal)** |

**Patented Double Wall Best® Palladium-103 Source (Model 2335)**

| | |
|---|---|
| Source Trade Name: | **Best® Palladium Source** |
| Marker: | **Tungsten** |
| Model #: | **2335** |
| Dose Rate Constant: | **(NIST 1999 with 2000 modification)** |
| External Length: | **5 mm (Nominal)      0.70 cGy/hr/U** |
| External Diameter: | **0.8 mm (Nominal)** |

To Place an Order, Call (800) 336-4970 or Fax (703) 451-4852

**References:**
1) A.S. Meigooni, D.M. Gearheart, and K. Sowards, Med. Phys. 27, 2168-2173 (2000)
2) S.W. Peterson and B. Thomadsen, Brachytherapy 1, 110-119 (2002)
3) R. Nath and N. Yue, Brachytherapy, 1, 102-109 (2002)



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*Best* ®
healthcare for everyone

01/2008

# Sterile Seed Products

## I-125

| Part # | Description |
|--------|-------------|
| **10165-1** | I-125 Strands in a Pack |
| **10165-3** | Needle w/I-125 Sources in Strands in a Tray |
| **10165-4** | Needle w/I-125 Loose Sources in a Tray |
| **10165-17** | Needle w/I-125 Loose Sources and Strands in a Tray |
| **10113-11** | Cartridge with I-125 Sources in a Pouch |



## Pd-103

| Part # | Description |
|--------|-------------|
| **15165-1** | Pd-103 Strands in a Pack |
| **15165-4** | Needle w/Pd-103 Loose Sources in a Tray |
| **15165-9** | Needle w/Pd-103 Sources in Strands in a Tray |
| **15165-11** | Needle w/Pd-103 Loose Sources and Strands in a Tray |
| **15113-4** | Cartridge with Pd-103 Sources in a Pouch |





**24 hours**

Available from Best® within 24 hours:
Best® I-125 and Pd-103 seeds in sterile packing

Best® Iodine-125 Seed

Best® Palladium-103 Seed

1 cm    5 mm seed    5 mm spacer

- Best® Custom Strand (Per Your Prescription)
- Best® Standard Strand (10 Seeds/Strand Spaced 1 cm Apart)
- Best® Real Time Strand/Needle (Use Our Loader in the OR)
- Best® Seeds and Spacers in Pre-loaded Needles
- Cartridges
- Loose Seeds

**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com

*Best®*
healthcare for everyone

# Best ADVANTAGE

- We are the largest supplier of Iridium 192 and Gold 198 seeds in the world.

- We are the first and only provider of Iridium 192 in nylon ribbons in a wide range of activities from 0.10 to 10 mg Raeq per seed or 0.3 to 30 mg Raeq per centimeter.

- We are the first and only company to provide custom service for Gold 198 permanent implants as well as a wide range of activities from 0.1 to 30 mCi per seed.

- We are the only company to provide a number of custom-made accessories for temporary and permanent implants in Brachytherapy.

- We are the first and only company to call our customers the morning after shipping to inform them of mode of transportation and expected arrival time.

- We can supply Ir-192, Au-198, Pd-103, I-125 and Brachytherapy accessories on a single Purchase Order.

- We ship most materials within 24 hours of receipt of the order.

**Best Medical International, Inc.**   7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com



*Best* ®
*healthcare for everyone*

01/2008

View

Best Medical International's

Complete Catalog

Through

This Link

Exhibit "C"

# Marker Kit

## Gold fiducial markers

### Accurate localization for soft tissue targets



Sterile Kit with 5 Markers (Loose)



Sterile Kit of 4 Needles with Marker in Each

Sterile Kit with Single Marker in Needle

**Best® Fiducial Marker Kit**

**Best® Gold Markers**

| Diameters | Varying Lengths |
|-----------|-----------------|
| 0.8 mm | 1.5 mm |
| | 3 mm |
| | 5 mm |
| | 7 mm |
| 1.0 mm | 1.5 mm |
| | 3 mm |
| | 5 mm |
| | 7 mm |
| 1.2 mm | 3 mm |
| | 5 mm |

Best Medical's gold markers are available in a variety of diameters and lengths to meet your needs for soft tissue localization such as prostate, liver, pancreas, lung, and breast.

- Best® gold markers are available now in tissue-absorbable strands (patent pending)
- Standard strand consists of two markers at 2 cm apart center to center
- Special marker strands with custom spacing are also available

- Excellent visualization under X-ray, Fluoro, CT, MRI, Ultrasound and other imaging modalities
- Sold individually, stranded, and in pre-loaded, pre-sterilized needle sets
- Can be used for brachytherapy, IMRT and IGRT

**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com



*Best* ®
*healthcare for everyone*

01/2008

(43)

# Anderson Marker Kit

## Part # 1074–0002



**Kit contains** a 25 cm long implanter (designed to limit implantation to 1 cm) and 10 stainless steel markers. The markers are easily identified on visualization films and also aid in treatment planning.

**Markers—Part # 179-1:** additional markers sold by vials (each vial contains 50 markers)

# Adjustable Marker Kit

## Part # 1074–0011



**Kit contains** a 20 cm long implanter with adjustable stop, one spare needle, one Allen wrench and 10 stainless steel markers.

**Markers—Part # 179-1:** additional markers sold by vials (each vial contains 50 markers)



**NOTE:** Gold markers (Part # 351) are also available to use with Anderson Marker Kit or Adjustable Marker Kit

**CAUTION:** This product should be carefully inspected by your staff prior to clinical use and should be used by authorized personnel only.





**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

01/2008

# Sterile Gold Marker Kits and Radiopaque Strands

| Part Number | Description |
| --- | --- |
| | **Sterile Gold Markers With Forceps** |
| 782-1 | 0.8 mm diameter, 3 mm long (5 markers) |
| 782-2 | 0.8 mm diameter, 5 mm long (5 markers) |
| 782-3 | 0.8 mm diameter, 7 mm long (5 markers) |
| 782-4 | 0.8 mm diameter, 10 mm long (5 markers) |
| 784-1 | 1.0 mm diameter, 3 mm long (5 markers) |
| 784-2 | 1.0 mm diameter, 5 mm long (5 markers) |
| 784-3 | 1.0 mm diameter, 7 mm long (5 markers) |
| 784-4 | 1.0 mm diameter, 10 mm long (5 markers) |
| 785-1 | 1.2 mm diameter, 3 mm long (5 markers) |
| 785-2 | 1.2 mm diameter, 5 mm long (5 markers) |
| 785-3 | 1.2 mm diameter, 7 mm long (5 markers) |
| 785-4 | 1.2 mm diameter, 10 mm long (5 markers) |

| Part Number | Description |
| --- | --- |
| | **Sterile Fiducial Marker Kit (1 per pack), 18 gauge, 10 cm Long Needle (0.8 mm OD)** |
| 1323-1 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 0.8 mm OD, 3 mm long gold marker (1) |
| 1323-2 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 0.8 mm OD, 5 mm long gold marker (1) |
| 1323-3 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 0.8 mm OD, 7 mm long gold marker (1) |
| 1323-4 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 0.8 mm OD, 10 mm long gold marker (1) |
| 1323-5 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 0.8 mm OD, 1.5 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (2 per pack), 18 gauge, 10cm Long Needle (0.8 mm OD)** |
| 1428-1 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 0.8 mm OD, 3 mm long gold marker (1) |
| 1428-2 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 0.8 mm OD, 5 mm long gold marker (1) |
| 1428-3 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 0.8 mm OD, 7 mm long gold marker (1) |
| 1428-4 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 0.8 mm OD, 10 mm long gold marker (1) |
| 1428-5 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 0.8 mm OD, 1.5 mm long gold marker (1) |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

# Sterile Gold Marker Kits and Radiopaque Strands—continued

| Part Number | Description |
|---|---|
| | **Sterile Fiducial Marker Kit (3 per pack), 18 gauge, 10 cm Long Needle (0.8 mm OD)** |
| 1325-1 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 0.8mm OD, 3 mm long gold marker (1) |
| 1325-2 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 5 mm long gold marker (1) |
| 1325-3 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 7 mm long gold marker (1) |
| 1325-4 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 10 mm long gold marker (1) |
| 1325-5 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 1.5 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (1 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 1004-1 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 3 mm long gold marker (1) |
| 1004-2 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 5 mm long gold marker (1) |
| 1004-3 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 7 mm long gold marker (1) |
| 1004-4 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (2 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 1430-1 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 3 mm long gold marker (1) |
| 1430-2 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 5 mm long gold marker (1) |
| 1430-3 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 7 mm long gold marker (1) |
| 1430-4 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (3 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 1017-1 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 3 mm long gold marker (1) |
| 1017-2 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 5 mm long gold marker (1) |
| 1017-3 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 7 mm long gold marker (1) |
| 1017-4 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 0.8 mm OD, 10 mm long gold markers (1) |
| | **Sterile Fiducial Marker Kit (4 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 1168-1 | 18 gauge, 20 cm long Pre-waxed needle (4) preloaded with 0.8 OD, 3 mm long gold marker (1) |
| 1168-2 | 18 gauge, 20 cm long Pre-waxed needle (4) preloaded with 0.8 OD, 5 mm long gold marker (1) |
| 1168-3 | 18 gauge, 20 cm long Pre-waxed needle (4) preloaded with 0.8 OD, 7 mm long gold marker (1) |
| 1168-4 | 18 gauge, 20 cm long Pre-waxed needle (4) preloaded with 0.8 OD, 10 mm long gold marker (1) |

**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com



*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| | **Sterile Fiducial Marker Kit (1 per pack), 18 gauge, 10 cm Long Needle (1.0 mm OD)** |
| 1318-1 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1318-2 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1318-3 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1318-4 | 18 gauge, 10 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (2 per pack), 18 gauge, 10 cm Long Needle (1.0 mm OD)** |
| 1432-1 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1432-2 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1432-3 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1432-4 | 18 gauge, 10 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (3 per pack), 18 gauge, 10 cm Long Needle (1.0 mm OD)** |
| 1320-1 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1320-2 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1320-3 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1320-4 | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (1 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** |
| 1008-1 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1008-2 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1008-3 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1008-4 | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (2 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** |
| 1434-1 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1434-2 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1434-3 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1434-4 | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (3 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** |
| 1019-1 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1019-2 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1019-3 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1019-4 | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| | **Sterile Fiducial Marker Kit (4 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** |
| 1170-1 | 18 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.0 mm OD, 3 mm long gold marker (1) |
| 1170-2 | 18 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.0 mm OD, 5 mm long gold marker (1) |
| 1170-3 | 18 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.0 mm OD, 7 mm long gold marker (1) |
| 1170-4 | 18 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.0 mm OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (1 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** |
| 1088-1 | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1088-2 | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1088-3 | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1088-4 | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (2 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** |
| 1436-1 | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1436-2 | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1436-3 | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1436-4 | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (3 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** |
| 1090-1 | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1090-2 | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1090-3 | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1090-4 | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (4 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** |
| 1172-1 | 17 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1172-2 | 17 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1172-3 | 17 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1172-4 | 17 gauge, 20 cm long Pre-waxed needles (4) preloaded with 1.2 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (1 per pack), 17 gauge, 30 cm Long Needle (1.2 mm OD)** |
| 1031-1 | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1031-2 | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1031-3 | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1031-4 | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with 1.2 OD, 10 mm long gold marker (1) |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

| Part Number | Description |
|---|---|
| | **Sterile Fiducial Marker Kit (2 per pack), 17 gauge, 30 cm Long Needle (1.2 mm OD)** |
| 1438-1 | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1438-2 | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1438-3 | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1438-4 | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with 1.2 OD, 10 mm long gold marker (1) |
| | **Sterile Fiducial Marker Kit (3 per pack), 17 gauge, 30 cm Long Needle (1.2 mm OD)** |
| 1033-1 | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 3 mm long gold marker (1) |
| 1033-2 | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 5 mm long gold marker (1) |
| 1033-3 | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 7 mm long gold marker (1) |
| 1033-4 | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with 1.2 OD, 10 mm long gold marker (1) |
| | **Sterile Radiopaque Marker Strand (1 per pack), 18 gauge, 10 cm Long Needle (0.8 mm OD)** |
| 1293-1-X | 18 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1293-2-X | 18 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1293-3-X | 18 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1293-4-X | 18 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| | **Sterile Radiopaque Marker Strand (2 per pack), 18 gauge, 10 cm Long Needle (0.8 mm OD)** |
| 1440-1-X | 18 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1440-2-X | 18 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1440-3-X | 18 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1440-4-X | 18 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| | **Sterile Radiopaque Marker Strand (3 per pack), 18 gauge, 10 cm Long Needle (0.8 mm OD)** |
| 1295-1-X | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1295-2-X | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1295-3-X | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1295-4-X | 18 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| **Sterile Radiopaque Marker Strand (1 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** ||
| 1013-1-X | 18 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1013-2-X · | 18 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1013-3-X | 18 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1013-4-X | 18 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| **Sterile Radiopaque Marker Strand (2 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** ||
| 1442-1-X | 18 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1442-2-X | 18 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1442-3-X | 18 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1442-4-X | 18 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| **Sterile Radiopaque Marker Strand (3 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** ||
| 1015-1-X | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1015-2-X | 18 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1015-3-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1015-4-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| **Sterile Radiopaque Marker Strand (1 per pack), 17 gauge, 30 cm Long Needle (0.8 mm OD)** ||
| 1130-1-X | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1130-2-X | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1130-3-X | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1130-4-X | 17 gauge, 30 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| **Sterile Radiopaque Marker Strand (2 per pack), 17 gauge, 30 cm Long Needle (0.8 mm OD)** ||
| 1444-1-X | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1444-2-X | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*Best*
healthcare for everyone

| Part Number | Description |
|---|---|
| 1444-3-X | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1444-4-X | 17 gauge, 30 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| **Sterile Radiopaque Marker Strand (3 per pack), 17 gauge, 30 cm Long Needle (0.8 mm OD)** | |
| 1132-1-X | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 3 mm long gold marker |
| 1132-2-X | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long gold marker |
| 1132-3-X | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 7 mm long gold marker |
| 1132-4-X | 17 gauge, 30 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 0.8 mm OD, 10 mm long gold marker |
| **Sterile Radiopaque Marker Strand (1 per pack), 17 gauge, 10 cm Long Needle (1.0 mm OD)** | |
| 1357-1-X | 17 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 3 mm long gold marker |
| 1357-2-X | 17 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 5 mm long gold marker |
| 1357-3-X | 17 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 7 mm long gold marker |
| 1357-4-X | 17 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 10 mm long gold marker |
| 1357-5-X | 17 gauge, 10 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 1.5 mm long gold marker |
| **Sterile Radiopaque Marker Strand (2 per pack), 17 gauge, 10 cm Long Needle (1.0 mm OD)** | |
| 1446-1-X | 17 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 3 mm long gold marker |
| 1446-2-X | 17 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 5 mm long gold marker |
| 1446-3-X | 17 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 7 mm long gold marker |
| 1446-4-X | 17 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 10 mm long gold marker |
| 1446-5-X | 17 gauge, 10 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 1.5 mm long gold marker |
| **Sterile Radiopaque Marker Strand (3 per pack), 17 gauge, 10 cm Long Needle (1.0 mm OD)** | |
| 1359-1-X | 17 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 3 mm long gold marker |
| 1359-2-X | 17 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 5 mm long gold marker |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| 1359-3-X | 17 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 7 mm long gold marker |
| 1359-4-X | 17 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 10 mm long gold marker |
| 1359-5-X | 17 gauge, 10 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 1.5 mm long gold marker |
| **Sterile Radiopaque Marker Strand (1 per pack), 17 gauge, 20 cm Long Needle (1.0 mm OD)** ||
| 1268-1-X | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 3 mm long gold marker |
| 1268-2-X | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 5 mm long gold marker |
| 1268-3-X | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 7 mm long gold marker |
| 1268-4-X | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 10 mm long gold marker |
| 1268-5-X | 17 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.0 mm OD, 1.5 mm long gold marker |
| **Sterile Radiopaque Marker Strand (2 per pack), 17 gauge, 20 cm Long Needle (1.0 mm OD)** ||
| 1448-1-X | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 3 mm long gold marker |
| 1448-2-X | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 5 mm long gold marker |
| 1448-3-X | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 7 mm long gold marker |
| 1448-4-X | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 10 mm long gold marker |
| 1448-5-X | 17 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.0 mm OD, 1.5 mm long gold marker |
| **Sterile Radiopaque Marker Strand (3 per pack), 17 gauge, 20 cm Long Needle (1.0 mm OD)** ||
| 1270-1-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 3 mm long gold marker |
| 1270-2-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 5 mm long gold marker |
| 1270-3-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 7 mm long gold marker |
| 1270-4-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 10 mm long gold marker |
| 1270-5-X | 17 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.0 mm OD, 1.5 mm long gold marker |
| **Sterile Radiopaque Marker Strand (1 per pack), 16 gauge, 20 cm Long Needle (1.2 mm OD)** ||
| 1329-1-X | 16 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.2 mm OD, 3 mm long gold marker |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
**phone** 703 451 2378   800 336 4970   **fax** 703 451 5228   www.bestmedical.com

*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| 1329-2-X | 16 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.2 mm OD, 5 mm long gold marker |
| 1329-3-X | 16 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.2 mm OD, 7 mm long gold marker |
| 1329-4-X | 16 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.2 mm OD, 10 mm long gold marker |
| 1329-5-X | 16 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 1.2 mm OD, 1.5 mm long gold marker |
| | **Sterile Radiopaque Marker Strand (2 per pack), 16 gauge, 20cm Long Needle (1.2 mm OD)** |
| 1450-1-X | 16 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.2 mm OD, 3 mm long gold marker |
| 1450-2-X | 16 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.2 mm OD, 5 mm long gold marker |
| 1450-3-X | 16 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.2 mm OD, 7 mm long gold marker |
| 1450-4-X | 16 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.2 mm OD, 10 mm long gold marker |
| 1450-5-X | 16 gauge, 20 cm long Pre-waxed needles (2) preloaded with absorbable strand enclosing 1.2 mm OD, 1.5 mm long gold marker |
| | **Sterile Radiopaque Marker Strand (3 per pack), 16 gauge, 20cm Long Needle (1.2 mm OD)** |
| 1331-1-X | 16 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.2mm OD, 3 mm long gold marker |
| 1331-2-X | 16 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.2 mm OD, 5 mm long gold marker |
| 1331-3-X | 16 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.2 mm OD, 7 mm long gold marker |
| 1331-4-X | 16 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.2 mm OD, 10 mm long gold marker |
| 1331-5-X | 16 gauge, 20 cm long Pre-waxed needles (3) preloaded with absorbable strand enclosing 1.2 mm OD, 1.5 mm long gold marker |
| | **Sterile Needle w/Best Marker Strand w/Iodine Dummy Seed (1 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 10113-17-X | 18 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long Iodine dummy seed |
| | **Sterile Needle w/Best Marker Strand w/Iodine Dummy Seed (3 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 10113-19-X | 18 gauge, 20 cm long Pre-waxed needles (1) preloaded with absorbable strand enclosing 0.8 mm OD, 5 mm long Iodine dummy seed |
| | **Sterile Fiducial Marker Kit With Spacers (1 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** |
| 1306-1-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 3 mm long gold marker(s) and Spacer(s) |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970    fax  703 451 5228   www.bestmedical.com

*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| 1306-2-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1306-3-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1306-4-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 0.8 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (2 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** ||
| 1452-1-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1452-2-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1452-3-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1452-4-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 0.8 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (3 per pack), 18 gauge, 20 cm Long Needle (0.8 mm OD)** ||
| 1385-1-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 0.8 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1385-2-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 0.8 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1385-3-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 0.8 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1385-4-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 0.8 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (1 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** ||
| 1309-1-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1309-2-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1309-3-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1309-4-X | 18 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.0 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (2 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** ||
| 1454-1-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1454-2-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1454-3-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 OD, 7 mm long gold marker(s) and Spacer(s) |



**Best Medical International, Inc.**   7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com

*Best*®
*healthcare for everyone*

01/2008

| Part Number | Description |
|---|---|
| 1454-4-X | 18 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.0 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (3 per pack), 18 gauge, 20 cm Long Needle (1.0 mm OD)** | |
| 1387-1-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.0 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1387-2-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.0 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1387-3-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.0 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1387-4-X | 18 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.0 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (1 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** | |
| 1312-1-X | 17 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.2 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1312-2-X | 17 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.2 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1312-3-X | 17 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.2 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1312-4-X | 17 gauge, 20 cm long Pre-waxed needle (1) preloaded with 1.2 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (2 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** | |
| 1456-1-X | 17 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.2 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1456-2-X | 17 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.2 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1456-3-X | 17 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.2 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1456-4-X | 17 gauge, 20 cm long Pre-waxed needle (2) preloaded with 1.2 OD, 10 mm long gold marker(s) and Spacer(s) |
| **Sterile Fiducial Marker Kit With Spacers (3 per pack), 17 gauge, 20 cm Long Needle (1.2 mm OD)** | |
| 1389-1-X | 17 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.2 OD, 3 mm long gold marker(s) and Spacer(s) |
| 1389-2-X | 17 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.2 OD, 5 mm long gold marker(s) and Spacer(s) |
| 1389-3-X | 17 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.2 OD, 7 mm long gold marker(s) and Spacer(s) |
| 1389-4-X | 17 gauge, 20 cm long Pre-waxed needle (3) preloaded with 1.2 OD, 10 mm long gold marker(s) and Spacer(s) |



**Best Medical International, Inc.**  7643 Fullerton Road, Springfield, VA 22153  USA
phone  703 451 2378   800 336 4970   fax  703 451 5228   www.bestmedical.com

*Best* ®
*healthcare for everyone*

01/2008

View

Best Medical International's

Complete Catalog

Through

This Link

Exhibit "D"



Contact Novoste          Careers          Request Info          News

# Novoste ™
SIMPLE SOLUTIONS TO COMPLEX INTERVENTIONS ™

[SEARCH]

## Healthcare Professional

Patient

**Healthcare Professional**

Novoste Corporation

Beta-Cath 3.5 F

Beta-Cath 5 F

Case Studies

Hospital Experiences

Clinical Trials

Expert Presentations

Customer Services

Medical Services

Reimbursement

Radiation Licensing

Conferences

Home

 Printable version

### Healthcare Professional : Novoste Corporation



*"Today, vascular brachytherapy is considered the Standard of Care for patients suffering from coronary in-stent restenosis. We find the NovosteT Beta-CathT System ideally designed for use in the cardiac cath lab. Its portability, ease of use and radioisotope are ideal for this specific application."*

*John S. Douglas, Jr., M.D.*

*Director, Interventional Cardiology*

*Emory University Hospital, Atlanta, Georgia*

**Novoste Corporation, based in Atlanta, Georgia,** develops advanced medical treatments for coronary and vascular diseases and is the worldwide leader in vascular brachytherapy - radiation therapy delivered inside a blood vessel to prevent its reclosure (restenosis) following balloon angioplasty and other catheter-based interventional procedures. The NovosteT Beta-CathT System is commercially available in the United States, as well as in the European Union, Canada, and several other countries. The Beta-CathT System is primarily used to treat patients suffering from "in-stent" restenosis, a condition in which coronary stents become blocked with new tissue growth. It is estimated that approximately 150,000 patients in the U.S. need treatment for this condition annually. Novoste has also initiated clinical trials to investigate the role of vascular brachytherapy to treat peripheral arterial disease and arterial-venous dialysis graft stenosis.

© 2002-2012 Best Vascular, Inc. View our legal and privacy notice.

Exhibit "E"

1  Kimberly S. Winick  (SBN 120363)
   CLARK & TREVITHICK
2  800 Wilshire Boulevard, Twelfth Floor
   Los Angeles, California  90017
3  Telephone: (213) 629-5700
   Facsimile: (213) 624-9441
4  kwinick@clarktrev.com

5  Attorneys for Creditor
   World Wide Medical Technologies, LLC,

6

7

8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

   **SAN FERNANDO VALLEY DIVISION**
10

11 In re                                        Case No. 1:09-BK-12675 MT

12 NORTH AMERICAN SCIENTIFIC, INC., a           Chapter 11 Proceeding
   California corporation,

13          Debtor.

14                                              ORDER AUTHORIZING (1) THE SALE OF
                                                CERTAIN ASSETS OF THE ESTATE FREE
15                                              AND CLEAR OF LIENS, CLAIMS, AND
                                                INTERESTS PURSUANT TO  11 U.S.C.
16                                              § 363; (2) THE ASSUMPTION AND
                                                ASSIGNMENT OF CERTAIN
17                                              EXECUTORY CONTRACTS; AND (3) THE
                                                REJECTION OF THE DEBTOR'S
18                                              INTERESTS, IF ANY, IN CERTAIN
                                                EXECUTORY CONTRACTS
19

20

21

22

23

24

25

26

27

28

FILED & ENTERED

APR 08 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY adomingu DEPUTY CLERK

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

562582.1 (B15891.001)

1    FOX ROTHSCHILD LLP
     1800 Century Park East, Suite 300
2    Los Angeles, California 90067-3005
     Telephone: 310.598.4150
3    Facsimile: 310.556.9828

4    Josefina Fernandez McEvoy (SBN 147138)
     jfmcevoy@foxrothschild.com
5    Sarah Korobkin (SBN 214236)
     skorobkin@foxrothschild.com
6
     Attorneys for Creditor BEST THERATRONICS, INC.
7

8

9                    UNITED STATES BANKRUPTCY COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                   SAN FERNANDO VALLEY DIVISION

12

13   In re:                              Case No.:   1:09-bk-12675-MT

14

15   NORTH AMERICAN SCIENTIFIC, INC.,    ORDER AUTHORIZING (1) THE SALE OF
                                         CERTAIN ASSETS OF THE ESTATE FREE
16   a California corporation,           AND CLEAR OF LIENS, CLAIMS, AND
                                         INTERESTS PURSUANT TO  11 U.S.C. § 363;
17                                       (2) THE ASSUMPTION AND ASSIGNMENT
                                         OF CERTAIN EXECUTORY CONTRACTS;
18                                       AND (3) THE REJECTION OF THE
                                         DEBTOR'S INTERESTS, IF ANY, IN
19              Debtor                   CERTAIN EXECUTORY CONTRACTS

20

21

22        Upon the Court's consideration of the motion of North America Scientific, Inc. (the

23   "Debtor"), a California corporation, debtor and debtor-in-possession in the above-captioned

24   chapter 11 case, for entry of an Order Authorizing (1) the Sale of Certain Assets of the Estate Free

25   and Clear of Liens, Claims and Interests pursuant to  11 U.S.C § 363; (2) the Assumption and

26   Assignment of Certain Executory Contracts; and (3) the Rejection of the Debtor's Interests, if any,

27   in Certain Executory Contracts (the "Motion"); the objections filed with the Court or stated on the

28   record of the hearing on the Motion (collectively, the "Objections"); the statements and arguments

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD., TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  of counsel and the evidence presented at the hearing; the Court hereby finds as follows:

2      A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief

3  described herein pursuant to 28 U.S.C. §§ 157 and 1334.

4      B.      Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5      C.      The Motion and related determinations are core matters under 28 U. S.C.

6  §§  157(b)(2)(A), (M) and (N).

7      D.      The relief granted herein is authorized under 11 U.S.C. §§ 105, 353 and 365, and

8  Bankruptcy Rules 2002, 6004 and 6006.

9      E.      Based on the declarations of service previously filed with the Court, notice of the

10  Motion was adequate and reasonable under the circumstances and no further notice concerning the

11  Motion and the relief granted herein is required.

12      F.      The Debtor did not receive an Initial Overbid[1] from a Qualified Bidder concerning

13  the Assets that are the subject of the Motion at or prior to the Bid Deadline; hence, the Auction

14  was not held and the hearing on the Motion proceeded with respect to the Asset Purchase

15  Agreement executed with Best Theratronics, Inc., a Virginia corporation (the "Buyer") on or about

16  March 11, 2009, as amended hereby (the "APA"), resulting in Buyer being the successful bidder

17  on the Assets.

18      G.      The Buyer submitted satisfactory evidence showing its financial wherewithal to

19  consummate the sale as set forth in the APA, and make future payments contemplated under the

20  APA and the Executory Contracts that Debtor is assuming and assigning to Buyer. The purchase

21  price for the Assets (as defined in the APA) is $2,000,000.  At the Closing, as an accommodation

22  to the parties, Buyer shall pay $1,200,000 to Silicon Valley Bank by wire transfer for application

23  to Silicon Valley Bank's secured claim against the Debtor, and shall pay $50,000 to the

24  Debtor.  Buyer also shall execute a promissory note in favor of Debtor providing for seven

25  monthly payments of $100,000, commencing one month following the Closing, followed by an

26  eighth and final payment of $50,000 eight months following the Closing.  Until such time as

27

_____

[1] Capitalized terms used herein shall have the meaning ascribed to such terms in the APA or the Motion.

28

562582.1 (B15891.001)

3

ORDER AUTHORIZING (1) THE SALE OF CERTAIN ASSETS OF
THE ESTATE FREE AND CLEAR OF LIENS

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  Silicon Valley Bank's secured claim against the Debtor is fully satisfied, each monthly installment

2  payment shall be made by Buyer, as an accommodation to the parties, to Silicon Valley Bank for

3  application to Silicon Valley Bank's secured claim against the Debtor.

4       H.     The Bidding Procedures and the hearing on the Motion provided a full, fair and

5  reasonable opportunity for any person or entity to make a higher and better offer to purchase the

6  Assets (as defined in the APA).  The sale was conducted in a non-collusive and fair manner,

7  without fraud or deceit, in good faith and is the result of an arms' length transaction between the

8  Debtor and the Buyer.  Accordingly, the Buyer is a good faith purchaser within the meaning of 11

9  U.S.C. § 363(m) and neither the Debtor nor the Buyer have engaged in any conduct that would

10  permit the sale transaction to be avoided under 11 U.S.C. § 363(n).

11       I.     The Debtor provided notice of this final hearing as directed by the Court.

12       J.     The Debtor is a party to a patent license with IdeaMatrix (the "SurTrak License")

13  pursuant to which the Debtor has manufactured products known as SurTrak pre-plugged needles

14  and strands (the "SurTrak Products").

15       K.     The Debtor is not a party to any other intellectual property licenses relating to the

16  SurTrak Products.

17       L.     The Debtor does not intend to and is not selling or transferring to Buyer the

18  SurTrak License or any intellectual property or rights thereunder, or the SurTrak Products.

19       M.     The Buyer does not intend to and is not buying the SurTrak License or any

20  intellectual property or rights thereunder, or the SurTrak Products.

21       N.     The SurTrak License, including all intellectual property or rights thereunder, and

22  all records and documents relating thereto, including work station manuals, design files, device

23  history records, and quality assurance records containing information about the SurTrak Products,

24  and the SurTrak Products (together, the "SurTrak Assets") are and shall be expressly identified as

25  "Excluded Assets" under the APA.

26       O.     The work station manuals relating to the SurTrak Products are maintained on hard

27  drives or other recording systems that are separated from the Assets, and these will be maintained

28  intact by the Debtor, unmodified in any way.

1    P.    The design files, device history records, and quality assurance records relating to

2  the SurTrak Products are maintained on hard drives where records concerning Assets also are

3  maintained.  Prior to the Closing, the Debtor shall make an electronic copy of those portions of

4  the design files, device history records, and quality assurance records that relate to the SurTrak

5  Products, and shall delete the duplicated information from the hard drives and, to the extent

6  possible, from any other records that constitute Assets.  The Debtor shall maintain possession and

7  control of the electronic copy, subject to the terms of the SurTrak License.

8    Q.    The SurTrak License shall be rejected as of the Closing of the Sale, which shall be

9  not later than April 15, 2009, and all rights of the Debtor thereunder shall terminate as of that date.

10  Immediately upon rejection, the Debtor shall cease manufacture, sale and delivery of SurTrak

11  Products and shall otherwise comply with the termination-related requirements of the SurTrak

12  License.

13    R.    Buyer shall have absolutely no interests of any kind in the SurTrak License, and is

14  on notice that it is subject to all intellectual property claims that any of the Objecting Parties may

15  have against Buyer, including but not limited to claims concerning the SurTrak License, the

16  SurTrak Products, and any other Assets or Excluded Assets under the APA.

17    S.    The Assets purchased by Buyer include machinery and equipment arranged in

18  workstations designed and used by the Debtor to manufacture SurTrak Products.  Prior to delivery

19  of the machinery and equipment to Buyer, the Debtor shall take photographs of each work station

20  from as many angles as appropriate to clearly identify all of the components of each work station,

21  the line-up and order of use of the components of each work station, and the spatial relationships

22  among all of the workstations.  The Debtor shall maintain and preserve the photographs, subject to

23  any requirements of the SurTrak License.

24    T.    The Transfers of the Assets pursuant to the terms and provisions of the APA shall

25  be valid, legal and effective transfers to the Buyer, free and clear of any and all interests, claims,

26  liens, encumbrances, rights of first refusal (the "Interests") under 11 U.S.C. §§ 105 and 363(b)

27  and (f), but not free and clear of any future claims that may arise with respect to the Assets.

28    U.    The Debtor may sell the Assets free and clear of any interests under 11 U.S.C.

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

562582.1 (B15891.001)

1  § 363(f) because one or more of the standards set forth in Subsections 363(f)(1) – (5) have been

2  satisfied.  In particular, Section 363(f)(2) is applicable as the entities holding Interests consent to

3  the sale of the Assets.  Any holder of an interest that did not object to the Sale Motion is deemed

4  to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).  Any holder of an interest that did

5  object or whose objection has been overruled fall within one or more of the other subsections of

6  Section 363(f) and are adequately protected by having their interest, if any, attach to the cash

7  proceeds from the sale of the Assets (as defined in the APA) against or in which they assert an

8  interest, and with the same validity, in the same order of priority, and to the same extent as existed

9  prior to the sale.

10       V.     The Debtor has demonstrated that approval of the sale, the APA and the

11  transactions contemplated thereby (collectively, the "Sale Transaction") is in the best interest of

12  the estate and the creditors.  The Debtor has shown good and sufficient business justification

13  supporting the sale of the Assets (as defined in the APA) to the Buyer pursuant to 11 U.S.C.

14  § 363(b) as set forth in the Sale Motion and the hearing thereon, and the sale to the Buyer is a

15  reasonable exercise of the Debtor's business judgment.

16       W.     The consideration paid by the Buyer for the Assets (as defined in the APA)

17  constitutes fair and adequate value for the Assets, and the terms and conditions of the APA are fair

18  and reasonable.  Buyer would not have entered into the APA and would not consummate the Sale

19  Transaction, if the Sale Transaction under the APA was not consummated free and clear of any

20  and all Interests except as otherwise stated above in paragraph T.

21       X.     The Debtor has shown that it is an exercise of its sound business judgment to

22  assume and assign the Executory Contracts and Real Estate Leases (as defined in the APA).  By

23  agreement with the lessors under the Real Estate Leases, the Debtor is authorized to assume and

24  assign Real Estate Leases, provided that the Debtor has cured pursuant to the terms of the APA, or

25  provided adequate assurance of cure of any default existing prior to the date hereof under the Real

26  Estate Leases under 11 U.S.C. § 363(b)(1).

27       Y.     The Debtor has satisfactorily provided, pursuant to 11 U.S.C. § 365(b)(1),

28  sufficient evidence of: (i) its ability and willingness to promptly cure its defaults under the

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  Executory Contracts, and (ii) adequate assurance of future performance by the Buyer under the

2  Executory Contracts to be assumed and assigned to Buyer.

3      Z.      All secured creditors have consented, either expressly or implicitly by the lack of

4  objection to the Motion, to the sale to Buyer.

5      AA.     The sale of the Assets to Buyer, and the granting of the motion, is in the best

6  interest of Debtor, its estate, and all creditors and parties in interest.

7      BB.     The Debtor solicited other and further offers for the purchase of the Assets, but no

8  such offers were received.

9      CC.     Buyer must have at least verbal assurance from the State of California that Buyer

10 can operate the Debtor's business with a verbal medical device license and a properly issued or

11 transferred radioactive materials license before the Closing, otherwise Buyer would not be

12 purchasing a going concern business.

13          **NOW, THEREFORE, IT IS HEREBY ORDERED,** as follows based on the

14 findings and conclusions set forth above and on the record of the hearing on the Motion:

15      1.      The Motion is granted and the Asset Purchase Agreement attached as Exhibit 1

16 hereto is approved in is entirety, except as modified herein, if and only if the Buyer expressly

17 agrees to the following:

18          a.      The 10-day period set forth in Sections 1.1 and 2.4 of the APA shall be

19 deemed to have expired on April 2, 2009.

20          b.      Buyer shall make an earnest money deposit with Debtor's counsel in the

21 sum of $300,000 by April 8, 2009, at 5:00 p.m. PST (the "Deposit").

22          c.      The Closing shall occur on or before April 15, 2009; provided, however,

23 that any issues related to Buyer obtaining the necessary licenses to operate the Debtor's business

24 without disruption are resolved before the Closing.

25          d.      The Deposit shall be refundable to Buyer solely if Buyer does not receive a

26 verbal representation from a duly authorized representative of the State of California that it can

27 operate the Debtor's business on a verbal medical device license, and/or Buyer does not receive

28 written confirmation from the State of California that it has been properly granted or transferred a

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  radioactive materials license before the Closing.

2        2.     Objections not withdrawn or addressed by this Order are hereby overruled.

3        3.     Findings of fact shall be deemed conclusions of law and conclusions of law shall be

4  deemed findings of fact as appropriate.

5        4.     Buyer is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy

6  Code.

7        5.     The sale was negotiated in good faith and at arms length and is in the best interest

8  of the estate and the creditors, and a proper exercise of the Debtor's business judgment, and

9  without collusion, fraud, deceit or illegality; hence, the Sale Transaction shall be protected under

10  11 U.S.C. § 363(n).

11        6.     The Assets were adequately marketed and the purchase price represents the fair

12  market value for the assets.

13        7.     Excluded Liabilities.  Section 1.1(bb)(xi) of the APA, "Excluded Assets" shall be

14  modified to read as follows:  and causes of  action of Debtor or this bankruptcy estate without

15  limitation, all rights and avoidance claims of Debtor arising under Chapter 5 of the Bankruptcy

16  Code, and any and all claims, counterclaims, demands, and causes of action of Debtor or this

17  bankruptcy estate against any party other than as specified released in this Agreement or the Order

18  approving the sale transaction, including, but not limited to, current or former directors, officers,

19  attorneys, accountants, investment bankers, and other professionals, employees, shareholders or

20  agents of Debtor sounding in tort or otherwise airing under the Bankruptcy Code or applicable

21  state law and any directors and officers insurance policies."

22        8.     Section 1.1(bb)(xii) shall be added to the APA to provide that all SurTrak Assets

23  are "Excluded Assets."

24        9.     The Debtor will use its best efforts to assure that no SurTrak Assets are delivered to

25  Buyer, and Buyer will return or delete, as applicable, any SurTrak Assets of which it obtains

26  possession, whether intentionally or inadvertently;

27        10.    Prior to delivery to Buyer of the machinery and equipment used to manufacture

28  SurTrak Products, the Debtor shall take photographs of each work station from as many angles as

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

**CLARK & TREVITHICK**
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

1   appropriate to clearly identify all of the components of each work station, the line-up and order of

2   use of the components of each work station, and the spatial relationships among all of the

3   workstations.  The Debtor shall maintain and preserve the photographs for seven years, subject to

4   any requirements of the SurTrak License;

5        11.    Prior to the Closing, the Debtor shall make an electronic copy of  those portions of

6   the design files, device history records, workstation manuals, and quality assurance records that

7   relate to the SurTrak Products, and shall delete the duplicated information from the hard drives

8   that are Assets under the APA and, to the extent possible, from any other records that constitute

9   Assets.  The Debtor shall maintain possession and control of the electronic copy, subject to the

10   terms of the SurTrak License;

11        12.    The SurTrak License shall be rejected as of the Closing of the Sale, and all rights of

12   the Debtor to use the License shall terminate as of that date.  Immediately upon rejection, the

13   Debtor shall cease manufacture, sale and delivery of SurTrak Products and shall otherwise comply

14   with the termination-related requirements of the SurTrak License;

15        13.    Buyer shall not make any effort to analyze the delivered machinery and equipment

16   in an effort to specifically and intentionally discern protected information about the manufacture

17   or other protected information about the SurTrak Products;

18        14.    The requirement of a stay pursuant to Rule 6004(g) and 6006(d) of the Bankruptcy

19   Rules is waived;

20        15.    The Debtor is authorized to execute all documents and take any actions reasonably

21   necessary to effectuate the sale, including, but not limited to, the escrow closing, sale agreement,

22   bill of Sale;

23        16.    The cure claims identified on Exhibit "2" are hereby fixed in the amounts set forth

24   on Exhibit "2" as lodged on the case docket as docket entry number 122;

25        17.    The Debtor is authorized to assume and assign to Buyer the executory contracts

26   identified on Exhibit "2" as lodged on the case docket as docket entry number 122;

27        18.    The Debtor's interest in the executory contract and ancillary agreements entered

28   into between the Debtor and Administaff Companies is hereby rejected, effective as of the closing

1  of the sale of the Assets;

2       19.     The Debtor's interest, if any, in any and all Executory Contracts entered into

3  between the Debtor and all other parties identified on Exhibit "3" as lodged on the case docket as

4  docket entry number 122 (other than Administaff and the Objecting Parties) is hereby rejected,

5  effective on March 12, 2009, with Debtor making any related postpetition administrative priority

6  expenses;

7       20.     The terms of this order shall be binding on Buyer and its successors, the Debtor and

8  its successors, and all other parties-in-interest in the Debtor's case, including any trustee or

9  examiner later appointed in this case or upon conversion of this case to Chapter 7 of the

10  Bankruptcy Code.

11       21.     The Court shall retain jurisdiction to interpret, implement, and enforce the

12  provisions of, and resolve any disputes arising under or related to this Order and the APA, all

13  amendments thereto, any waivers and consents thereunder and each of the agreements executed in

14  connection therewith.

15  IT IS ORDERED

16  ###

17

18

19

20

21

22

23

24

25

26  DATED: April 8, 2009

United States Bankruptcy Judge

27

28

ORDER AUTHORIZING (1) THE SALE OF CERTAIN ASSETS OF
THE ESTATE FREE AND CLEAR OF LIENS

CLARK & TREVITHICK
A PROFESSIONAL LAW CORPORATION
800 WILSHIRE BLVD, TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90017

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
| --- | --- |
| Debtor(s). | CASE NUMBER 1:09-BK-12675-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.

Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 800 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90017

A true and correct copy of the foregoing document described as  ORDER AUTHORIZING (1) THE SALE OF CERTAIN ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363; (2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (3) THE REJECTION OF THE DEBTOR'S INTERESTS, IF ANY, IN CERTAIN EXECUTORY CONTRACTS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**  – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 7, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**X**-Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ____**April 7, 2009**_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**X**-Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 7, 2009 | Iris Palmer | /s/ Iris Palmer |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

562582.1 (B15891.001)

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:09-BK-12675-MT |

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

| | |
|---|---|
| Katherine Bunker | kate.bunker@usdoj.gov, |
| Jacquelyn H. Choi | jacquelyn.choi@dlapiper.com |
| Garrick A. Hollander | jmartinez@winthropcouchot.com |
| Jennifer L. Nassiri | jennifer.nassiri@dlapiper.com |
| Vincent J. Novack | vnovak@mofo.com |
| Leo D. Plotkin | lplotkin@lsl-la.com |
| United States Trustee (SV) | upstpregion16.wh.ecf@usdoj.gov |
| Marc J. Winthrop | pj@winthropcouchot.com |

562582.1 (B15891.001)

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:09-BK-12675-MT |

**II. SERVED BY U.S. MAIL**

**Kimberly S. Winick**
CLARK & TREVITHICK
800 Wilshire Boulevard, Twelfth Floor
Los Angeles, California 90017

Stephen Gould Corporation
Attn: Cheryl Eckerdt
45541 Northport Loop West
Fremont, CA 94538
**Silicon Valley Bank**
Attn: Mark Turk
5820 Canoga Ave, #210
Woodland Hills, CA 91367

Robert W. Baird & Co.
777 East Wisconsin Ave.
Suite 2800
Milwaukee, WI 53202`
Gauthier Non-Ferrous Products, Inc.
12355 April Street
Montreal, Quebec Canada QC
H1B5L8
Securities Exchange Comm
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036

**Daniel H. Reiss**
Levene, Neale, Bender, Rankin
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
**Gibson, Dunn & Crutcher LLP**
Attn: C.D. Dusseault
333 S. Grand Ave.
Los Angeles, CA 90071-3197
**Silicon Valley Bank**
Attn: Authorized Agent
3003 Tasman Dr.
Santa Clara, CA 95054

Escape Velocity Systems, Inc.
2520 55th Street
Suite 204
Boulder, CO 80301
Scientific Alloys Corp
P. O. Box 223
Clifton NJ 07015

562582.1 (B15891.001)

ORDER AUTHORIZING THE (1) SALE OF CERTAIN ASSETS OF THE ESTATE FREE
AND CLEAR OF LIENS, CLAIMS, AND INTERESTS

| In re: NORTH AMERICAN SCIENTIFIC, INC., aka, NAS MEDICAL | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER  1:09-BK-12675-MT |

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**

| | |
|---|---|
| L. Michael Cutrer<br>Email:  Michael.cutrer@yahoo.com | Gibson Dunn & Crutcher LLP<br>Christopher D. Dusseault, Esq.<br>Email:<br>CDusseault@gibsondunn.com |
| Ideal Matrax, Inc.<br>Richard Terwilliger<br>Email: idealmatrix@aol.com | MDS Nordian, a Division of MDS<br>Mr. Gilles Quintal<br>Email:<br>gilles.QUINTAL@mdsinc.com |
| Mr. Richard Terwilliger<br>Richard Terwilliger<br>Email: idealmatrixc@aol.com | Day Pitney LLP<br>Markl Russak<br>Email:<br>mrussak@daypitney.com |
| Eckert & Ziegler CNL Scientific Resource<br>Karen Haskins<br>Email: Karen.haskins@ezag.com | Automation GT, Inc.<br>Peter Gottaschilch<br>Email:<br>pgottschlich@automationgt.com |
| Connecticuit Packaging Materials<br>Rincy Smith<br>Email: rindys@ctpkg.com | Pacific Radiation Corp<br>Mr. Dan Gollnick, Ph.D.<br>Emial:  dr_dan@pacificrad.com |
| MKA Systems Consulting, Inc.<br>Janet Johnson<br>Email: jjohnson@mkasystems.com | McDermott,Will & Emery LLP<br>Mr. Marc E. Brown, Esq.<br>Emial: meb@mwe.com |
| Sterogenics US<br>Sheryl Jungbult<br>Email:  jzugsmith@sterigenics.com | Hantel Technologies<br>Bill Booth<br>Email: bbooth@hanteltech,com |
| Silicon Valley Bank<br>Mark Terk<br>mturk@svb.com | |

562582.1 (B15891.001)

ORDER AUTHORIZING THE (1) SALE OF CERTAIN ASSETS OF THE ESTATE FREE
AND CLEAR OF LIENS, CLAIMS, AND INTERESTS

1 | **SERVICE LIST FOR ENTERED ORDER**

2 | I.      The following parties were listed on the Court's NEF system as of April 8, 2009, and were electronically served by the system as such:

3 |

4 | • Todd M Arnold     tma@lnbrb.com

5 | • Katherine Bunker     kate.bunker@usdoj.gov

6 | • Alan C Chen

7 | • Jacquelyn H Choi     jacquelyn.choi@dlapiper.com

8 | • Daniel Denny     ddenny@gibsondunn.com

9 | • G Larry Engel     lengel@mofo.com

10 | • Garrick A Hollander     jmartinez@winthropcouchot.com

11 | • Robert E Huttenhoff     rhuttenhoff@shbllp.com

12 | • Paul D Marotta     Paul@tclg.com

13 | • Josefina F McEvoy     jparrott@foxrothschild.com

14 | • Jennifer L Nassiri     jennifer.nassiri@dlapiper.com

15 | • Vincent J Novak     vnovak@mofo.com

16 | • Leo D Plotkin     lplotkin@lsl-la.com

17 | • Daniel H Reiss     dhr@lnbrb.com

18 | • United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

19 | • Kimberly S Winick     kwinick@clarktrev.com

20 | • Marc J Winthrop     pj@winthropcouchot.com

21 | II.     Debtor's counsel is instructed and ordered to serve all relevant parties in accordance with the Order Granting Debtor's Emergency Motion to Limit Notice of Certain Matters Requiring Notice to Creditors Pursuant to Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure [docket no.22].

22 |

23 |

24 |

25 |

26 |

27 |

28 |

562582.1 (B15891.001)

ORDER AUTHORIZING THE (1) SALE OF CERTAIN ASSETS OF THE ESTATE FREE
AND CLEAR OF LIENS, CLAIMS, AND INTERESTS